1          UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
2

3 KYLE RIVET, individually and    :
  on behalf of all others        :   No. 2:12-cv-02992-DMC-JBC
4 similarly situated,             :
                                  :
5          Plaintiffs,            :
                                  :
6    vs.                          :   Newark, New Jersey
                                  :   Wednesday, August 7, 2013
7 OFFICE DEPOT, INC.,             :   9:45 a.m.
                                  :
8          Defendant.            :

9            TRANSCRIPT OF STATUS CONFERENCE
          BEFORE THE HONORABLE JOSEPH A. DICKSON
10             UNITED STATES MAGISTRATE JUDGE

11 APPEARANCES:

12 For the Plaintiffs:          Klafter, Olsen & Lesser, LLP
                                By:  SETH R. LESSER, ESQUIRE
13                                   FRAN L. RUDICH, ESQUIRE
                                Two International Drive, Suite 350
14                              Rye Brook, NY 10573

15

16 For the Defendant:           Morgan, Lewis & Bockius, LLP
                                By:  RICHARD G. ROSENBLATT, ESQUIRE
17                                   AUGUST W. HECKMAN, III, ESQUIRE
                                502 Carnegie Center
18                              Princeton, NJ  08540-6289

19

20

21 Transcription Company:       KLJ Transcription Service, LLC
                                P.O. Box 8627
22                              Saddle Brook, NJ  07663
                                (201)703-1670 - Fax (201)703-5623
23

24 Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.
25

1                           I N D E X

2

3                                                      PAGE

4   Argument by Mr. Lesser. . . . . . . . . . . . .  4, 6, 14, 30

5   Argument by Mr. Rosenblatt. . . . . . . . . . 5, 11, 25, 34

6   Colloquy. . . . . . . . . . . . . . . . . . . . . . . . 35

7   Order.. . . . . . . . . . . . . . . . . . . . . . . . . 38

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                    3

1          (Conference commenced at 9:45 a.m.)

2          THE COURT:  All right.  This is the matter of Gibbons

3  versus Office Depot, Docket Number 12-2992.  May I have

4  appearances, please?

5          MR. LESSER:  Good morning, Your Honor.  Seth Lesser

6  and Fran Rudich for the plaintiffs.

7          MS. RUDICH:  Good morning, Your Honor.

8          THE COURT:  Good morning.

9          MR. ROSENBLATT:  And Richard Rosenblatt and August

10  Heckman, Morgan, Lewis and Bockius, for defendant.

11          THE COURT:  Okay.  Good morning.

12          MR. ROSENBLATT:  Good morning.

13          THE COURT:  All right.  Since all these telephone

14  calls and letters have been going back and forth, have you --

15  before I get started into this -- have you worked anything out

16  at all?

17          MR. ROSENBLATT:  Unfortunately we have not, Your

18  Honor.

19          THE COURT:  Okay.  Well, what are we doing about

20  these opt-in depositions?  Have they been rescheduled since I

21  cancelled them?

22          MR. ROSENBLATT:  They have not, Your Honor.  I think

23  we were waiting to have the conference today to --

24          THE COURT:  Okay.

25          MR. ROSENBLATT:  -- go forward.  We'd obviously like

1    to go forward quickly on them.

2              THE COURT:  Do you have a position on this, Mr.

3    Lesser?

4              MR. LESSER:  Our position is that, unless the claims

5    of misclassification are in the case, we need not fly to

6    Oklahoma, Iowa, possibly Florida or Rhode Island on issues

7    that aren't part of the case.  We certainly fly around the

8    country enough doing these cases, but when something is not at

9    all in the case, when it's clear that the only purposes of

10   depositions is to ask about something that might never be in

11   the case, that really serves little purpose.

12             It also serves little purpose, because the likelihood

13   of these depositions even affecting the 216(b) motion is pretty

14   remote, but an argument can be made on that, I would certainly

15   concede.  So, you know, we believe there should be clarity as

16   to what's actually here.

17             I mean, in fact, as Your Honor may have noticed from

18   all the pleadings, if you've noticed the pile of the briefs

19   and the like, now there's an issue whether there's a case at

20   all.  Certainly, Office Depot is taking the position that

21   there is no jurisdiction in the Court anymore.  So, rather

22   than have these, you know, really, frankly, what could be

23   truly irrelevant deposition depositions, we should either hold

24   them in abeyance or otherwise limit them to the issues that

25   are presently in the motions and what's presently in the case.

1           THE COURT:  Before you argue, I want to set the

2    groundwork for what I think.  We can argue back and forth on

3    whether or not we should hold them in abeyance, but we're not

4    going to do them twice.  So, if we go forward, I am going to

5    permit the full Rule 26 scope of discovery deposition, and to

6    the issues that you say are not in the case.  I would agree

7    that they're not in the case.  I would also agree that they're

8    not out of the case.  They are just there waiting.

9           So, what I'm really interested to know is why --

10   forget about those issues for a moment.  He just said it's the

11   only reason you want to take the depositions.  Is that true?

12          MR. ROSENBLATT:  No, Your Honor.  There's also

13   another issue that involves the mutual understanding of the

14   parties as to the fluctuating work week.  We're entitled to

15   ask these opt-in plaintiffs about that.  We will ask them

16   about that.  We will ask them about misclassification.  What

17   were their job responsibilities and so forth.

18          I think, you know, we're proceeding in the

19   alternative in some respects.  For example, as they've pointed

20   out, we don't believe the Court has jurisdiction, but we're

21   not going to make that judgment for the Court, so we're going

22   forward as if, you know, ultimately the Court might prove them

23   to be right.  All we're asking is, we think we have an

24   appropriate defense to assert.  We've moved to amend.

25   Amendment is liberally granted.  Let's go forward, get these

1   depositions done.  We don't want -- we definitely don't want

2   to do them twice.

3         THE COURT:  I'm not going to rule on them today.  I

4   have read the papers, though.  I just want to give it a little

5   bit more thought.  But the amendment motion, it is a very

6   liberal standard and, so, the only thing I have to look at is

7   futility.  Really.

8         MR. LESSER:  Well, Your Honor, our --

9         THE COURT:  I do not see a timeliness argument.  I

10  don't see any kind of delay argument.  I mean, you can make

11  it, but it's not enough, under the liberality standards, to

12  get there.  So, the question is whether --

13        MR. LESSER:  Well, that's -- okay.  I'm sorry.

14        THE COURT:  The question is whether or not the

15  defense they want to put in here, they should be either

16  estopped from by their own words or by Judge Cavanaugh's

17  words.  And I'll give you a preliminary thought.  Judge

18  Cavanaugh did not throw -- didn't even discuss this issue.

19  So, it's not out of the case, based on what Judge Cavanaugh

20  said.  That's what I think.  Do you disagree with that?

21        MR. LESSER:  The -- I'm sorry.  The -- well, the --

22        THE COURT:  They want to change --

23        MR. LESSER:  Judge Cavanaugh's --

24        THE COURT:  They want to take a different -- they

25  want to take an alternative position on the classification --

1          MR. LESSER:  Correct.

2          THE COURT:  -- of these employees.

3          MR. LESSER:  Correct.

4          THE COURT:  If I read your papers right, you're

5    saying that they waived that or they should be estopped from

6    making that argument now.

7          MR. LESSER:  Correct.  That is one of our arguments,

8    obviously.

9          THE COURT:  And I think you said to Judge Cavanaugh

10   it's the law of the case.  Somewhere I saw your language.

11         MR. LESSER:  Well, our argument is that one cannot.

12   And to date, despite, in essence, our opposing the challenge,

13   there has never been an instance under the history of the Fair

14   Labor Standards Act or litigation under it, where a defendant

15   has had a reverse -- like we call reverse misclassification

16   defense.  Tells employees they are non-exempt employees, have

17   them sign forms that they are non-exempt employees, and then,

18   when paying the overtime to non-exempt employees under the

19   requirements of what it pays non-exempt employees, does it

20   incorrectly, can then turn around --

21         THE COURT:  Does it incorrectly is part one of your

22   case, but now you're --

23         MR. LESSER:  Correct.  Now I'm addressing --

24         THE COURT:  Okay.  Okay.

25         MR. LESSER:  -- the defense.

1          THE COURT:  Okay.

2          MR. LESSER:  The part one of the case, we say Judge

3   Cavanaugh's decision says did not meet the fluctuating work

4   week requirements.

5          THE COURT:  Right.  Right.  I understand.

6          MR. LESSER:  In fact, I'll have a footnote.  Mr.

7   Rosenblatt said he wants to ask these deponents about their

8   mutual understanding on the fluctuating work week.  That's not

9   at issue.  There's no issue on that in the case.

10         THE COURT:  Well, since their motion to dismiss was

11  denied, --

12         MR. LESSER:  Correct.

13         THE COURT:  -- or at issue, --

14         MR. LESSER:  What -- what --

15         THE COURT:  -- isn't it a factual issue now?  Doesn't

16  that just lead the case to be litigated on whether the

17  fluctuating work week was appropriately applied or not?

18         MR. LESSER:  Well, Judge Cavanaugh said the Court is

19  convinced that, by paying the holiday pay, the terms of

20  fluctuating work week were not met.

21         THE COURT:  But he didn't grant you summary judgment --

22         MR. LESSER:  We didn't ask for it.  We couldn't have

23  asked for it, Your Honor.  I mean, one of the arguments Office

24  Depot is making:  why, plaintiffs, didn't you move for

25  summary judgment?  We could not possibly have moved for

1   summary judgment after that decision came down.  So, you know,

2   that's why.  We're wait -- once the collective action members

3   are before the Court, we certainly would move for summary

4   judgment.

5           THE COURT:  And just so you know, I'm not saying that

6   it's not an uphill fight for them to do a reverse

7   classification argument.

8           MR. LESSER:  Right.

9           THE COURT:  I mean, it may -- I'm not saying you're

10  going to win.  My job at this stage and here is to determine

11  whether or not they have a fair right to litigate.

12          MR. LESSER:  Well, that's ex -- well, that's the --

13  that's the question of -- of -- of -- of --

14          THE COURT:  That's the question of the day; right?

15          MR. LESSER:  That -- that's sort of one of the

16  questions of the day, yes.

17          THE COURT:  That question, which I'm not going to

18  actually answer today, because I'm still looking at it -- I'm

19  just kind of giving you my preliminary --

20          MR. LESSER:  Right.

21          THE COURT:  -- thoughts, allowing you to, if you want

22  to come back and we have a formal argument on this, we can

23  perhaps do that.  But my point is, it's such -- I am seeing

24  such -- I'm not seeing it black and white.  And it's a fut --

25  to me, it's not the delay or any of the other things when you

1    look at a <u>Rule</u> 15 motion, it's -- the only thing I really

2    think I have to focus on is futility.  And going back to what

3    I said:  are they estopped from doing it?  Did Judge Cavanaugh

4    rule on it?  And Judge Cavanaugh did not rule on it.  He --

5             MR. LESSER:  He did not rule on misclassification, --

6             THE COURT:  Okay.

7             MR. LESSER:  -- absolutely.  If that -- if that's

8    your question, --

9             THE COURT:  Yes.

10             MR. LESSER:  -- of course he didn't.

11             THE COURT:  Okay.

12             MR. LESSER:  Because, quite literally, it wasn't

13    presented as ever possibly being in the case.  When we were

14    before you on May 14th --

15             THE COURT:  Right.

16             MR. LESSER:  -- we had no idea that this was

17    theoretically --

18             THE COURT:  Which is why -- which is why -- another

19    reason -- which is why people amend their pleadings.

20             MR. LESSER:  Right.  And I mean, let's --

21             THE COURT:  And I'm not trying to be --

22             MR. LESSER:  Your Honor, let's --

23             THE COURT:  I'm not trying to be

24             MR. LESSER:  -- cut through why we have this in the

25    case, I suspect.

1          THE COURT:  Why we have this in the case?

2          MR. LESSER:  On May -- yeah.

3          THE COURT:  It's because they're trying --

4          MR. LESSER:  No.  It wasn't because of a --

5          THE COURT:  They've lost their --

6          MR. ROSENBLATT:  Can I explain why?

7          THE COURT:  -- motion to dismiss and they're --

8          MR. ROSENBLATT:  Because I'm the one who won.  They

9   can speculate all they want as to why it's in the case, --

10         MR. LESSER:  Please do.

11         MR. ROSENBLATT:  -- I can explain it, Your Honor.

12  It's very simple.

13         THE COURT:  Okay.

14         MR. ROSENBLATT:  As they point out in the papers,

15  that in 2005 Office Depot had classified every assistant store

16  manager as exempt.  They got sued.  As a prophylactic measure,

17  rather than face an onslaught of lawsuits around the country,

18  they decided, you know what?  Forget about it.  We'll entitle

19  -- we'll give these people overtime, but we're going to do it

20  during the fluctuating work week policy.  And so, it wasn't as

21  if they all of a sudden woke up one day and said, you know

22  what?  For years we were mistaken in classifying these people

23  as exempt.

24         I wasn't involved in that litigation in 2005, nor was

25  my firm.  Okay?  Nor were any of the in-house people who are

1   involved in this case.  And as we -- we focused on the motion

2   to dismiss.  We focused on the fact that -- and we still

3   believe -- that the fluctuating work week policy that was

4   implemented was perfectly lawful.  And we're going to defend

5   in part based upon that, in the alternative.

6          But as we started looking at it and interviewing

7   witnesses, we said, holy smokes, these people are exempt.  And

8   you know what, Your Honor?  We said, let's do -- and my

9   colleague and I had this conversation sitting in my office.

10  We said, let's dig, dig, dig in and do an investigation

11  ourselves, because we can't assert a defense comport -- and

12  comport with Rule 11 unless we've done our investigation.

13         We did our investigation.  We called opposing counsel

14  and said -- or wrote them saying can we amend our answer, they

15  waited two weeks and finally said no, with any explanation.

16  We filed our motion.  It's as simple as that, Your Honor.

17         So, I see the letters that are casting all kinds of

18  aspersions at us, saying we've come up with some Machiavellian

19  scheme.  I am not that smart, Your Honor.  I've told you what

20  I did.  This is how it happened.  We've asked the Court for

21  permission.  It's a very valid defense.  We've submitted some

22  evidence already in support of it.  We're going to submit

23  more.

24         We want to take the depositions.  We want to show

25  whether, if any of these plaintiffs are opt-ins, maybe they

1   are properly non-exempt, but we're entitled to show that they

2   are not representative of the entire body of assistant store

3   managers, many of whom we are absolutely convinced could have

4   and perhaps should have been classified exempt, but the only

5   reason they weren't was because the company had made a

6   decision back in 2005 as a prophylactic measure to treat them

7   as non-exempt and pay them overtime.  That's as simple as

8   that, Your Honor.

9          MR. LESSER:  Well, it should have been in the answer

10  in February.  It should have -- we would have had a different

11  schedule for this particular phase --

12         THE COURT:  I think he just said --

13         MR. LESSER:  -- of the litigation.

14         THE COURT:  When did you conclude that you needed to

15  do this?

16         MR. ROSENBLATT:  Right before we asked for permission.

17         THE COURT:  When was your investigation?

18         MR. ROSENBLATT:  It was ongoing.  We finally got to

19  talk to various managers.  I remember it was sometime -- we

20  hadn't made the decision -- now, let me make it clear.  We

21  were exploring the idea in our own heads and we hadn't gotten

22  the interviews scheduled until around the time and right after

23  the conference before the Court.  And as soon as we did that,

24  Your Honor, and we said we've got a defense here and we

25  approached them.  It was nothing more nefarious than that.

1        And the fact of the matter is --

2        THE COURT:  I suppose -- go ahead.

3        MR. ROSENBLATT:  The fact of the matter is, Your

4  Honor, we moved to dismiss.  We moved to dismiss on a legal

5  claim.  We could not have asserted an exemption defense on a

6  12(b)(6) motion.  We are really at no different place than we

7  would have been, whether we had asserted this defense when we

8  filed our answer in, I believe, March than if we did it in

9  May.

10       And frankly, Your Honor, if they had just consented

11 to it, we wouldn't be here now, we would have had these

12 depositions done, our sur-reply would have been done, and the

13 whole -- all of these issues would have been in front, enjoin

14 -- all of the issues would have been joined in front of the

15 Court by now.

16       MR. LESSER:  Well, Your Honor, apparently the company

17 knew of this issue.  This case was around for well over a

18 year.  It was never mentioned in any of the pleadings at all.

19 In fact, the company's pleadings were explicitly saying we --

20 these are non-exempt employees.  I don't believe it's a

21 meritorious defense.  Ultimately, you go to futility and the

22 question, can you assert such defense.  It's never been done

23 ever.  If it's been meritorious, we wouldn't have gone 70

24 years, somebody would have successfully done it.

25       This is not a statute that it permits companies to

1    take positions on classifications and then change their mind

2    to wheedle out of it when they turn out to have gotten other

3    things around.

4              THE COURT:  Well, things --

5              MR. LESSER:  And in March --

6              THE COURT:  I -- I --

7              MR. LESSER:  Your Honor, I mean, it does make a

8    difference to the case, because Your Honor made it before Your

9    Honor and we set out a short schedule of essentially two

10   months for discovery, and the only reason it was that long was

11   Your Honor said when will you get -- to the other side and

12   both sides -- when will you get your discovery on this out.

13   We said within a week or so.  We built in 30 days for a

14   response.  And then I said, we could -- and you may recall, I

15   said we'll be able to move, frankly, as soon as we get a few

16   documents, we probably don't even need a 30(b)(6), Your Honor.

17   That's what I said.

18             THE COURT:  I remember.

19             MR. LESSER:  And you may recall.

20             THE COURT:  I remember, but go ahead.

21             MR. LESSER:  Right.

22             THE COURT:  Go ahead.  Let me -- finish up.

23             MR. LESSER:  And what happened was, of course the

24   documents were actually -- I will credit to my colleagues on

25   the other side -- were produced without objections and we

1   didn't have to meet and confer, we actually got documents

2   immediately.  Maybe we were told by Your Honor to produce, I

3   don't recall.  And once we had that, within a few days we

4   actually moved for the collective action certification.

5        This is an entirely different -- even assuming it can

6   be done under the FLSA to, after you classify something, tell

7   them then they're in that classification, get them to sign

8   that they're in that classification, laterally -- I assume, by

9   the way -- it's never been clear.  I assume Office Depot is

10  not taking the position, by the way, all of our clients should

11  be paying the money back to Office Depot, since they were

12  never entitled to be overtime in the first place.  I assume

13  they're not going to be asking for that.

14        MR. ROSENBLATT:  Of course not.  We answered --

15        MR. LESSER:  I assume that.  So, accepting that -- I

16  mean, that's one of their many reasons -- you can't backwards

17  classify or reclassify.

18        THE COURT:  Well, I --

19        MR. LESSER:  Because it would open those kinds of

20  issues.

21        THE COURT:  I -- I'm --

22        MR. LESSER:  Am I not addressing your point?  I'm

23  sorry.

24        THE COURT:  Yes.  Yes.  But let me say, I know --

25  seeing you in here before, I know this is what you do.  I know

1   that you know what you're talking about.  I'm slightly -- I

2   need a little bit more homework on the fact that a company

3   can't, at some time after they've declared employees exempt or

4   non-exempt, change their mind.  Because maybe duties change.

5   There can be a thousand reasons, it seems to me, that

6   something may be different.

7          Now, I've got -- well, your adversary just told me --

8   but, I mean, I am not like -- it doesn't seem to me that I

9   could say, well, since it's never been done, then we're not

10  going to do it here.  I don't think that's a legal defense.

11         MR. ROSENBLATT:  And, Your Honor, --

12         THE COURT:  Now, it may be odd and it may still --

13  and, by the way, just don't misunderstand me.  They still may

14  lose.  They may go down in flames.  But I didn't -- I think it

15  might -- it's -- I am still not persuaded it shouldn't be

16  litigated.

17         MR. LESSER:  Well, I will put it this way, Your

18  Honor.  As best we can tell -- and then I'll give you a reason

19  for some of our skepticism -- on May 8th of this year, and the

20  first time that I have seen anywhere under the FLSA, was there

21  a circumstance that (indiscernible), and that's why --

22         THE COURT:  Was there -- I'm sorry?  A circum --

23         MR. LESSER:  On May 8th of this year, --

24         THE COURT:  A circumstance --

25         MR. LESSER:  -- a few weeks before this affirmative

1    defense or motion to amend affirmative defense appeared --

2    that's why (indiscernible) comes, that it wasn't -- it didn't

3    have to do with -- despite the fact the company knew that this

4    supposedly was an issue, despite the fact that an answer was

5    put in in March, despite the fact that we have -- the case has

6    been around for a year, we've always been rather skeptical, in

7    fact, that the lawyers now did their due diligence belatedly,

8    after they had answered, after the case had been there for a

9    year, after we had come before Your Honor to set out a

10   discovery schedule -- the fact is, on May 8th of this year,

11   for the first time in the FLSA that we've ever seen or anybody

12   has ever seen, at least in chat groups and, you know, lawyers

13   nobody has ever seen it, a company attempted to reverse -- to

14   put a reverse misclassification defense into a case.

15        There was a decision that came out, it was called Ott

16   v. Publix Stores.  It's in the papers.  In fact, that was on a

17   216(b) motion.  And we actually think that's where the idea

18   came from, was that this had made the rounds and was noticed.

19   It did not matter for the merits of the 216(b) motion at all.

20   The court in that case said, eh, whether or not you can do

21   this, I don't know, but it's certainly going to permit -- it's

22   certainly not going to prevent notice and conditional

23   certification to proceed.  The 216(b) motion was granted.

24        All the various reasons we're hearing as to why there

25   may be this complicates the motion for conditional

1    certification, the only time this whole misclassification has

2    ever arisen ever -- I mean, I can't cite you a case that says

3    it can't be done, because nobody has ever tried it, but it

4    certainly doesn't fit within the parameters of the statute,

5    which is to protect employees, not employers.

6              For example, a company could misclassify.  Jobs

7    change.  It happens all the time.  In fact, companies are

8    under an obligation, I believe, to evaluate that.  It happens.

9    But this particular issue -- I mean, if you look at the Ott

10   case, one could say it would be --

11             THE COURT:  How do you spell that?  That -- spell

12   that again?  Or say that -- or spell it, please.

13             MR. LESSER:  It's Ott -- O-T-T -- versus Publix,

14   which I believe is P-U-B-L-I-X.

15             THE COURT:  And you say it's in the -- I'm looking at

16   your brief and I'm --

17             MR. LESSER:  Okay.  Which brief do you have?  Since

18   there are so many.

19             THE COURT:  Plaintiffs' Memorandum of Law in

20   Opposition to Defendant's Motion to Amend its Answer.

21             MR. LESSER:  Okay.  Oh, it's actually in the 216(b)

22   brief.  I'm sorry.  Which you maybe -- which we haven't

23   submitted it.  It's on the docket.  I was in Princeton that --

24   or we've -- no.  There are --

25             THE COURT:  Where --

1          MR. LESSER:  There are basically three sets of

2  motions before Judge Cavanaugh.  Or -- or and/or before you.

3          THE COURT:  Right.

4          MR. LESSER:  Okay.  The first is motions to

5  substitute new named plaintiff.  Because of the Rule 68 offers

6  of judgment to the first that are -- or the several offers of

7  judgment.  That's one set of briefing.  And that's all done.

8          There is the --

9          THE COURT:  And it's -- I'm sorry.  Let's just, very

10  briefly, you're opposing that?

11          MR. ROSENBLATT:  I'm sorry?

12          THE COURT:  You're opposing the motion to substitute

13  the named plaintiff?

14          MR. ROSENBLATT:  Yes.

15          THE COURT:  All right.  Go ahead.

16          MR. LESSER:  That -- and that goes to the Article 3

17  arguments and how do you interpret Rule 68, and talked about

18  malleable issues in a litigation.  That's entirely doubtful.

19          THE COURT:  Okay.

20          MR. LESSER:  Entirely.  I could go through it, but it

21  gets complicated.

22          THE COURT:  It's okay.  When we --

23          MR. LESSER:  Okay.  That's issue number one.

24          THE COURT:  Right.

25          MR. LESSER:  Issue number two is -- the second set of

1    briefing is the motion to amend the answer by Office Depot.

2             THE COURT:  Right.

3             MR. LESSER:  That's -- all the briefs are there.

4             THE COURT:  Right.

5             MR. LESSER:  There's also plaintiffs' motion for a

6    conditional certification.

7             THE COURT:  Right.

8             MR. LESSER:  In those briefs -- which are on the

9    docket, I said, I don't think we submitted them to you --

10            THE COURT:  That's all right.  I get the docket.

11            MR. LESSER:  -- we cite -- we cited in our opening

12   brief and in our reply brief the Ott case.

13            THE COURT:  Okay.

14            MR. LESSER:  And --

15            THE COURT:  And then there's also a motion to

16   equitably toll the opt-in plaintiffs' claims.

17            MR. LESSER:  That was in the alternative on the

18   motion to amend the answer, because --

19            THE COURT:  Oh, on the alter -- right.  I understand.

20            MR. LESSER:  Correct, because --

21            THE COURT:  I understand.

22            MR. LESSER:  -- the fact is, --

23            THE COURT:  You know, if I --

24            MR. LESSER:  -- delay is being now created by all

25   this.

1          THE COURT:  If I -- if -- okay.  I got it.  I read

2    those papers, too.  All right.  Let's --

3          MR. LESSER:  Okay.

4          THE COURT:  You know what?  Let's do the -- let's go

5    back to what really is at stake today.

6          MR. LESSER:  Okay.

7          THE COURT:  Whether these motions -- whether these

8    depositions are necessary or -- necessary is probably the

9    wrong word.  Whether the defendants are asserting their need

10   to take these depositions in light of your motion for

11   conditional class certification.  Collective certification.

12         MR. LESSER:  Right.

13         THE COURT:  I mean, did I frame that correctly?

14         MR. ROSENBLATT:  I think that's right, Your Honor.

15   Whether --

16         THE COURT:  Okay.  And you're saying there are at

17   least two issues you want to explore.  You -- today you've

18   said so far there are at least two issues you want to explore.

19   One, the plaintiffs' or the opt-in plaintiffs' understanding

20   of their status.

21         MR. ROSENBLATT:  Of the fluctuating work week policy.

22         THE COURT:  I'm sorry.  The fluctuating work week.

23         MR. ROSENBLATT:  As well as their job

24   responsibilities, their duties, their level of discretion.

25         THE COURT:  Oh, that seems to me -- by the way, why

1  isn't that a --

2          MR. LESSER:  Okay.  Well, let me --

3          THE COURT:  -- legitimate query?

4          MR. LESSER:  Let me address them one at a time.  The

5  first issue is not an issue.  We will stipulate that the

6  fluctuating work week mutual understanding as it was

7  implemented -- not whether it was legally reached -- is not in

8  the case.  And maybe it -- maybe that's not clear.

9          MS. RUDICH:  No, we'll stipulate --

10         MR. LESSER:  Under the fluctuating work week, --

11         THE COURT:  All right.  Okay.  Wait.  Let's stop.  I

12  want you to stop for a minute.  I'll tell you why.

13         MR. LESSER:  Okay.

14         THE COURT:  I mean, to the extent you can stipulate

15  things out, you guys need to sit down and work that out.

16  Let's -- it's not going to happen here like this.

17         MR. LESSER:  Okay.

18         THE COURT:  Because he's going to have questions --

19         MR. LESSER:  Well, if -- the only reason I raise it,

20  Your Honor, is if we stipulated the -- the first -- the issue

21  of flying around the country on something that we will

22  stipulate to makes no sense.  So, that's --

23         THE COURT:  Well, I --

24         MR. LESSER:  There are two reasons.

25         THE COURT:  No, I get that.

1          MR. LESSER:  That's the second reasons.

2          THE COURT:  All right.  But let -- all right.  So, --

3          MR. LESSER:  So, let's go -- we'll return to the

4    first reason.

5          THE COURT:  Well, actually, that was the first

6    reason, but --

7          MR. LESSER:  Okay.  Whichever the order is.

8          THE COURT:  -- the second reason -- the second reason

9    was they wanted to talk to the opt-in plaintiffs about what

10   their job duties were.  Which --

11         MR. LESSER:  Correct.

12         THE COURT:  Which that's always a legitimate inquiry;

13   isn't it?

14         MR. LESSER:  Only if there is an issue of job duties

15   in the case.

16         THE COURT:  Well, --

17         MR. LESSER:  Under the case -- under the cases --

18         THE COURT:  Okay.  And there will be --

19         MR. LESSER:  -- presently situated --

20         THE COURT:  There will be --

21         MR. LESSER:  Yes.

22         THE COURT:  -- an issue of job duties if I grant

23   their motion.

24         MR. LESSER:  That, I agree.  Absolutely.

25         THE COURT:  Okay.

1          MR. LESSER:  If the motion to amend is granted --

2          THE COURT:  Would you -- you -- all right.  Let him

3    -- let --

4          MR. LESSER:  -- then -- then I -- absolutely, Your

5    Honor, then that becomes part of the case.  Whether it will

6    affect the motion for conditional certification, we say it

7    won't, they say it will, --

8          THE COURT:  Well, I know, but that's --

9          MR. LESSER:  -- that's -- that -- absolutely.

10          THE COURT:  I -- the depositions would go forward on

11   that dispute.

12          MR. LESSER:  Correct.

13          MR. ROSENBLATT:  If there's not a --

14          THE COURT:  Do you agree that if I deny the motion,

15   the job duty issue is not in the case?

16          MR. ROSENBLATT:  If the motion is denied, the job

17   duties would not be in the case.  One second.

18          (Discussion among counsel, off the record.)

19          MR. ROSENBLATT:  Perhaps a technicality, but it's a

20   very legitimate one.  They're asking to amend the complaint.

21   We fully intend to assert the affirmative defense of the

22   exemption (indiscernible).  So, if that motion is granted,

23   they're getting the affirmative defense one way or the other,

24   Your Honor.

25          And on -- on --

1         THE COURT:  And then they'll bring a motion to have

2    it stricken.

3         MR. ROSENBLATT:  Yeah, sure.  But, you know, they --

4    as much as they want to say they haven't found in the history

5    of American jurisprudence or the FLSA jurisprudence any

6    similar circumstance, they haven't found a single case that

7    says we can't do it.  And they point to this case, the <u>Ott</u>

8    case, which I appreciate their pointing out to us; because,

9    again, apparently I'm not as astute in the law as perhaps I

10   should be, because the first I ever read of the case is when

11   they filed their brief and mentioned it.  So, that apparently

12   is at least one other case where a company has pleaded in the

13   alternative fluctuating work week and exemption status.

14        So, Your Honor, I think you're spot on.  I don't want

15   to sit here and argue everything that's in front of you.

16   There's an appropriate time and an appropriate place for that.

17   I think you get it.  We should be entitled to take these

18   depositions.  We should take them expeditiously.  And, you

19   know, if later on someone says that, you know, these issues

20   are not in the case, then that doesn't need to be considered.

21        But I think that, you know, we have really already

22   presented in our papers strong argument as to why this

23   amendment should be liberally granted.

24        THE COURT:  Let me ask one more question.  Let's say

25   I go your way on this.  And I say no depositions now, let's

1    get these motions decided, let's get the case in order.  And

2    then -- well, there's two scenarios.  Judge Cavanaugh denies

3    the motion to certify.

4              MR. LESSER:  Right.

5              THE COURT:  In that case, you'll never need those

6    opt-in plaintiffs; correct?

7              MR. ROSENBLATT:  If he --

8              THE COURT:  Denies the motion to certify the class.

9              MR. ROSENBLATT:  If the opt-ins are not in the case,

10   right, I mean, --

11             THE COURT:  You don't need to depose them.

12             MR. ROSENBLATT:  Right.

13             THE COURT:  Now, if he grants -- we resolve all this,

14   no matter how it comes down, shakes out, and then two months

15   from now you go to take the opt -- no.  Back up.  That's my

16   question.  If they're in the case, Judge Cavanaugh grants the

17   motion, --

18             MR. ROSENBLATT:  The motion for collective action

19   certification.

20             THE COURT:  Yes.

21             MR. LESSER:  Collective action certification, to be

22   exact.

23             THE COURT:  Yes.  Will you then want to depose the

24   opt-in plaintiffs?

25             MR. ROSENBLATT:  Absolutely.  I mean, it's going to

1   happen.  It might as well happen now, so that we have a record,

2   a more fulsome record that we can address the motion for

3   collective action certification.

4         THE COURT:  All right.  I have -- all right.  I got

5   one more question.  Have you -- and I don't think you have,

6   but correct me if I'm wrong -- sent me a letter or anywhere

7   briefed why you need their depositions now, either way?  In

8   other words, with all these arguments on the table, why you

9   need the depositions in the next two weeks, rather than after

10  the motion for class certification is decided.

11        MR. ROSENBLATT:  We have submitted --

12        THE COURT:  I mean, I think you've tried to tell me

13  that, but have you put it in writing to me?

14        MR. ROSENBLATT:  I --

15        THE COURT:  Not tried to tell me.  I didn't mean to

16  say it like that.  You've told me that today.

17        MR. ROSENBLATT:  I mean, I would -- I have to go back

18  and look at the letters here that explain the needs that we

19  were going to take the depositions.  I think we said it in the

20  sense of we need to get this done so we can file our

21  sur-reply, which has already been approved, in connection with

22  the motion for collective action certification.  I don't know

23  that we went through song and verse as to --

24        THE COURT:  All right.  Where did you --

25        MR. ROSENBLATT:  -- the specific issues.

1          THE COURT:  And did that come to me or Judge

2   Cavanaugh?

3          MR. ROSENBLATT:  I think --

4          THE COURT:  I'm sure it's on the docket and I'll find

5   it.

6          MR. ROSENBLATT:  I think it all came --

7          MR. LESSER:  It's the July 19th letter, I believe, to

8   Your Honor, from --

9          MR. ROSENBLATT:  There's a July --

10          MR. LESSER:  -- from Richard.  Mr. Rosenblatt.

11          MR. ROSENBLATT:  Yeah, there's a July --

12          MR. LESSER:  And then -- and then -- okay, fine.  You

13   have them both.

14          MR. ROSENBLATT:  There's a July 19 letter.  And then,

15   if you look at this July 30th letter and -- and I think either

16   expressly or certainly implicitly in the letter or the e-mail

17   attachments as exhibits, the purpose of it was -- and, in

18   fact, frankly, Your Honor, --

19          THE COURT:  I have the July 19th letter.

20          MR. ROSENBLATT:  -- these were all initially

21   scheduled depositions.  I need to remind you of that.

22          THE COURT:  No, I know.  I know.  I mean, --

23                    (Extended pause)

24          THE COURT:  How many are there?  How many depositions?

25          MR. ROSENBLATT:  How many are there?  Eight or nine.

1    MR. LESSER:  Right.  Your Honor, we absolutely agree

2  we weren't sure of why these depositions were going to take

3  place as a -- you know, as originally asked for, we said you --

4  these are people in the case, you want to depose them, we have

5  no idea what you're going to ask them about the fluctuating

6  work week, but, you know, you wanted to depose them.  We

7  discussed that with Your Honor in chambers when we were here

8  on May 14th.  You want to take depositions of the opt-ins;

9  that's fine.

10    So, we did schedule them and then we said, wait a

11  minute.  We don't object to having the depositions.  We still

12  don't object to having the depositions.  We just object to the

13  scope of the questions as addressing the theoretical amendment

14  and how that may affect the case.

15    But I think Mr. Rosenblatt is correct, his

16  essentially point is maybe --

17    THE COURT:  Generally speaking, if this hadn't gotten

18  so blown out of proportion, I would have just ordered you to

19  not direct any of these people not to answer any questions.

20  Because I do find this issue, whether or not it's ultimately

21  in the case, to be at least discoverable under Rule 26.  It's

22  just not that much of a stretch for me to understand --

23    MR. LESSER:  And, Your Honor, I appreciate that.

24    THE COURT:  -- that they have, you know, the

25  questions about exemption, about status, about what they

1   understood, about the work week.  I mean, this happens all the

2   time.  Sometimes things don't stay in the case.

3          So, if I were making this decision a week or so ago,

4   while I was in Italy, --

5          MR. ROSENBLATT:  Sorry.

6          MR. LESSER:  We did not know you were in Italy or

7   not.  I hope we didn't bother you with it.

8          THE COURT:  No.  No, no.  I -- no, I have a very good

9   staff.

10          I -- this would not be an issue, because I would have

11   just ordered the depositions to go forward.  I am willing to

12   give it a few minutes -- I'm willing to give it as much

13   thought as necessary to determine whether they should go

14   forward now or wait until after the class certification order

15   coming down from Judge Cavanaugh.  But, again, normally I

16   would allow discovery, even with the motion pending, to

17   determine -- I mean, it's just a -- this should be fairly

18   litigated.  And my --

19          MR. LESSER:  Your Honor, I fully appreciate --

20          THE COURT:  My problem -- my problem with this is,

21   you -- you know, we have this all the time.  You may be right,

22   but that doesn't mean it's not -- they don't have a right to

23   fairly try to prove you wrong.

24          MR. LESSER:  It -- well, it would be a --

25          THE COURT:  And I don't know if it's a matter of law,

1    because -- as a matter of law you're right on whether or not

2    this issue can come in the case.  I am not -- I am not -- I

3    had said in the beginning I'm not going to make a decision on

4    the futility argument today, but you can clearly see that I am

5    not overwhelmed by the arguments that you've made about it.  I

6    understand them and I understand why you made them.

7           But -- but until -- part of my problem is, until you

8    get answers from people who are on the ground, who are the

9    plaintiffs, who are the people who heard what they heard and

10   did what they did and said what they said, I don't know how we

11   can have a full fledged open discussion of these issues.

12          MR. LESSER:  Well, if it's at all relevant to the

13   issues in the case.  If -- in other words, if it has nothing

14   to do with the case -- in other words, let's assume these

15   people had to do something -- to take an example under the

16   FLSA.  Among other exist -- among other exemptions that exist

17   is a computer exemption, somebody who works with computers.

18          THE COURT:  Mm-hmm.

19          MR. LESSER:  The case is set up with nothing to do

20   with computers at all and whether people as their job do or do

21   not use computers.

22          THE COURT:  Okay.

23          MR. LESSER:  It would be as if the defendant says,

24   well, we now want to -- want to depose these people to see if

25   they ever touched computers, because that might be a claim

1   that some day, somehow, theoretically we might want to impose.

2          THE COURT:  Yeah, but they're --

3          MR. LESSER:  But that's hyperbolic.

4          THE COURT:  But they are not saying that.  They are

5   saying it's not theoretical, we want to make this claim now,

6   we want to make this defense now.

7          MR. LESSER:  Right, and our position is, if Judge

8   Cavanaugh says yes, that will be part of the case and that's --

9   that's -- I mean, look.  I mean, --

10         THE COURT:  Let me -- let's --

11         MR. LESSER:  This is a -- this is a -- there are so

12  many different pieces of this that --

13         THE COURT:  Yeah, but you know what the most --

14         MR. LESSER:  -- have never ever arisen before.

15         THE COURT:  I think -- you know, I think what's

16  coming down in my mind to the most important piece is,

17  assuming you win some class certification motion, these people

18  are going to be deposed anyway.

19         MR. LESSER:  Well, maybe, maybe not.  You asked Mr.

20  Rosenblatt that.  If there's conditional certification, then

21  we will certainly be before Your Honor or maybe we'll work it

22  out -- occasionally we do on cases -- as to who then would get

23  deposed.  Most likely, these people -- the defendant really

24  wants to depose all these people, most likely we'd probably

25  say, absolutely, you did all the early opt-ins, --

1              THE COURT:  These are --

2              MR. LESSER:  -- as compared to the later opt-ins.

3              THE COURT:  If these are early opt-ins and, I mean,

4    if these are people that have been identified now and, you

5    know, --

6              MR. LESSER:  I agree.  And I'm just being -- I mean,

7    tech -- as a technical point.  But you're right.  They would

8    be.  And it's conditional certification, which always can lead

9    to decertification.

10             THE COURT:  And they're going to get -- I think --

11   well, I mean, may -- I think it's possible I could rule in

12   your favor and in the end they'll win, because you get

13   nothing.  I don't think that's the way we should be litigating

14   the case.

15             MR. ROSENBLATT:  And, Your Honor, I just want to --

16   since I've tried to refrain from the substance and I don't

17   want to waste the Court's time with it.  But I just want to

18   make one point clear.  What we do as a matter of company

19   policy and in getting people to sign off that they understand

20   how the fluctuating work week works, which is the -- part of

21   the mutual understanding part, is not dispositive of what the

22   law, the Fair Labor Standards Act, requires.  There is

23   absolutely nothing under the law that says we can't pay

24   somebody overtime, whether it's pursuant to a fluctuating work

25   week policy or one-and-a-half times, and then still come into

1   this court and say, you know what?  We didn't have to do that.

2   That was essentially a premium pay or a perk.  When it comes

3   down to the law, we're on -- we're all square with the law.

4           And that's the part that I think they're missing when

5   they say, well, there's nothing in the hist -- there's nothing

6   in the FLSA that allows us to do it.  Absolutely we're allowed

7   to do it.  I just didn't want to leave that to go unrebutted.

8           THE COURT:  Okay.  All right.  I'm going to take a

9   break.

10          MR. LESSER:  Thanks.

11          MR. ROSENBLATT:  Thank you, Your Honor.

12              (Recess from 10:18 a.m. to 10:37 a.m.)

13          THE COURT:  Okay.  We took a little break.  I went

14  back and looked at the papers again.  I also reviewed the

15  motion to substitute in any plaintiff and, actually, that's

16  going to be my motion.

17          Let me ask you a question on that before I tell you

18  what we're going to do about the depositions.  If I deny that

19  motion, because of their arguments, you know, which I've just

20  read -- and I'm not trying to predict the future or -- and I'm

21  not trying to commit you to anything either, but it seems to

22  me, as a practical matter, if that motion is denied, wouldn't

23  you just file a new case with the plaintiffs you want?

24          MR. LESSER:  Yes.

25          THE COURT:  So then --

1          MR. LESSER:  My --

2          THE COURT:  -- can we talk about working that out?

3    Can we talk about working that out?  How would you be

4    prejudiced -- I mean, you'd have a victory, but then you'd

5    have a new lawsuit.  Which is the same as the old lawsuit, to

6    quote The Who.

7          MR. LESSER:  Are you asking -- who -- are you asking --

8          THE COURT:  I'm asking him first.

9          MR. LESSER:  Okay.  Thought so.

10         MR. ROSENBLATT:  When you say work it out.  I mean,

11   we would file our answer and we would certainly have an

12   affirmative defense about --

13         THE COURT:  Well, no.  You -- we'd have all the same

14   issues -- hey, that -- that's my point.  If I grant their

15   motion, we just go forward with the issues we have.  If I deny

16   their motion, about 20 days later then we're going to go

17   forward with the issues we have.

18         MR. ROSENBLATT:  Well, actually, I don't --

19         THE COURT:  Well, how would you be better off?

20         MR. ROSENBLATT:  How would I be -- well, they would

21   not be able to assert --

22         THE COURT:  And, in fact, the statute starts running

23   again; doesn't it?

24         MR. LESSER:  Well, the problem from plaintiffs'

25   perspective, --

1              THE COURT:  You would ask for equitable tolling of

2    some sort.

3              MR. LESSER:  We would -- right, for -- for ourselves

4    and others, because it would be months.  I mean, let's face

5    it, filing a new lawsuit --

6              THE COURT:  Mm-hmm.

7              MR. LESSER:  -- takes -- takes time.  And there's

8    time to respond, and then -- right, so there would be -- we'd

9    be asking -- and it might end up being a new Court as well.

10             THE COURT:  Okay.  All right.  So, there might be --

11             MR. LESSER:  That -- so that's --

12             THE COURT:  -- a delay, and you might have some

13   additional issues, in terms of your statute.

14             MR. LESSER:  We -- we'd be -- any new case, we'd ask

15   to have relation back.

16             THE COURT:  Mm-hmm.

17             MR. LESSER:  Etcetera, etcetera.

18             THE COURT:  Right.  And, I mean, I'm not saying

19   right, you should.

20             MR. LESSER:  And a whole new set of issues starts to

21   be --

22             THE COURT:  I'm saying, right, I anticipate that

23   would be your answer.

24             MR. LESSER:  Exactly.

25             MR. ROSENBLATT:  I'm not sure -- and the -- if you

Order                                                                    38

1    are asking us whether -- what we would agree to; I mean, for

2    the period of time that these opt-ins have been opted in, we

3    would agree that the statute of limitations for them has been

4    tolled.

5            You know, but you had asked me a question.  It would

6    require me to have a lot more thought devoted to exactly what

7    a deal would --

8            THE COURT:  Which is what I want you to do.

9            MR. ROSENBLATT:  Yeah, I'd have to talk to a client

10   and --

11           THE COURT:  Talk -- I mean, I just don't know what

12   the practical -- I mean, look.  There may be very significant

13   practical aspects for you and for you, but I want you to meet

14   and confer to see if this can be worked out.  I mean, I don't

15   anticipate, if I deny their motion -- and I'm not saying I'm --

16   I just read the papers.  I don't anticipate that the case is

17   going to go away.

18           MR. ROSENBLATT:  No, Your Honor.

19           THE COURT:  Okay.  So, why don't -- I'm going to

20   order you to meet and confer to discuss maybe withdrawing your

21   opposition.  Maybe there's something, a pound of flesh, you

22   could extract for that.  I don't know.  Maybe not.  I -- but

23   think about it and meet and confer.  If you decide -- you

24   know, just -- and let me know, if you would, within a week?

25   Is that fair?

1          MR. ROSENBLATT:  Yeah.  I'm here on vacation, but --

2          THE COURT:  Oh, you're --

3          MR. ROSENBLATT:  But I'll make it work, Your Honor.

4    No one else seems to care, so --

5          THE COURT:  All right.  Can we go off --

6          MR. LESSER:  Right, but you're not in Italy, are you?

7    You know, --

8          THE COURT:  Can we go off --

9          MR. ROSENBLATT:  I'm not -- it's just Margate, Your

10   Honor.  It's a short drive.

11         THE COURT:  Christine?  Go off the record, please.

12         MR. ROSENBLATT:  But I'm fine.  I'm not missing

13   working quite a bit, so --

14            (Off the record from 10:40 to 10:41 a.m.)

15         MR. LESSER:  There are certainly things, I suspect,

16   and just leave the ten days.  I can think of clever ways to

17   maybe compromise on some things.

18         THE COURT:  Well, just talk it out.

19         MR. LESSER:  Right.  For example, we might withdraw

20   the opposition to the amendment and that kind of thing.  That

21   will also fall by the way -- could wall -- could fall by the

22   wayside.

23         THE COURT:  Well, you might want to give that some

24   more thought, because we're going to go forward with the

25   depositions.  We would be going forward -- I looked at -- and

1   I'm thinking about how these cases work and I think about --

2   now, I remember -- and I'm not trying to move this fast; I

3   remember the Rule 16 conference -- but when these motions are

4   filed, or even before these motions are filed, usually we

5   allow for this type of discovery.  Whatever we know, we go

6   for.  And I think the Court is really more interested in

7   having a full explication of the facts than not.

8           Now, I have one question to ask you.  This is a fee-

9   shifting case; correct?

10          MR. LESSER:  Correct.

11          THE COURT:  Right.  I don't see how you can be heard

12  if you win the case.  And if you lose the case, then we should

13  have had the depositions go forward anyway.  So, --

14          MR. LESSER:  Then one small point, Your Honor, is --

15          THE COURT:  Yes?

16          MR. LESSER:  -- this will come around no matter what.

17  Depositions go forward, presumably -- and we originally

18  voluntarily offered to Office Depot a sur-reply.  There's

19  going to be new arguments entirely in there, based upon these

20  depositions.  We're probably going to be requesting a sur-

21  response.  Because they're going to be based upon these

22  transcripts and --

23          THE COURT:  Let's just take it as it comes.

24          MR. LESSER:  Okay.  And maybe not.

25          MR. ROSENBLATT:  And, Your Honor, we already laid out

1   the exemption argument in our opening -- or our opposition

2   brief, so it's not new, it's just now we'll have evidence

3   further to support it.  So, I don't think there's any novelty

4   associated with it, Your Honor.

5        THE COURT:  Well, let's don't anticipate problems.

6   You can see what we're doing when you leave here today.

7        You're going to sit down and talk about when you can

8   get these depositions rescheduled.  You're going to obviously

9   have to talk to your client, probably.

10       And you're going to talk about whether or not you can

11  come to some agreement on the amendment of the complaint.  And

12  my guess is that you're going to sweep into that discussion

13  the amendment of the answer.

14       I'd like to know, on your schedule, as soon as you

15  can get to me, because we didn't want to take too much time on

16  this case, but I'm -- it's August.  That's all I'll say.  On

17  your schedule, what you've been able to agree to, what you've

18  not been able to agree to, and what I need to decide.  Okay?

19       MR. LESSER:  Okay.

20       THE COURT:  Is there any --

21       MR. ROSENBLATT:  One other issue, if you -- Your

22  Honor, this is hopefully a minor one.  There is this cross-

23  motion for equitable tolling.  And we were surprised to see a

24  reply brief came in on that.  And the local rules do not

25  permit reply briefs on cross-motions.  And so, either we'd

Order                                                          42

1    like to have that reply brief stricken or have the opportunity

2    to submit a sur-reply to it.

3           MR. LESSER:  Your Honor, I've done reply briefs on

4    cross-motions.

5           THE COURT:  Let's --

6           MR. LESSER:  The rules don't say when they're due in

7    this court.

8           THE COURT:  Let's don't fight about it.  You get

9    three pages.

10          MR. ROSENBLATT:  Perfect.  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          MR. LESSER:  Thank you.

13          MR. ROSENBLATT:  Thank you, Your Honor.

14          Actually, well, we didn't address the -- right now

15   the sur-reply -- because you've adjourned the deadline for our

16   sur-reply on the motion for a collective action certification.

17          THE COURT:  Talk it out.  I --

18          MR. ROSENBLATT:  We'll sort that out.  Okay.

19          THE COURT:  Sort it out and let me know what you wan

20   to do.

21          MR. ROSENBLATT:  Thank you so much for taking the

22   time, Your Honor.

23               (Conference adjourned at 10:44 a.m.)

24                    * * * * * * * * *

25

1                    C E R T I F I C A T I O N

2          I, TERRY L. DeMARCO, court-approved transcriber,

3    certify that the foregoing is a correct transcript from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter.

6

7

8    _____          */S/ Terry L. DeMarco*
           03/13/14

9          Date                        Terry L. DeMarco, AD/T 566

10                                      KLJ Transcription Service

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25