**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KYLE RIVET, JEREMIAH HARRIET, AMANDA NOHRENBERG, BRENT KAUFMAN, and RON BELL individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**OFFICE DEPOT, INC.,**<br><br>**Defendant.** | Civ. No. 2:12-02992 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs have filed putative class and collective actions under the Fair Labor Standards Act ("FLSA") and state wage and hour laws. This matter comes before the Court on two motions to dismiss filed by Defendant Office Depot, Inc. ("Office Depot"). For the reasons stated below, both motions will be **GRANTED**.

**I.    BACKGROUND**

The Court limits its background discussion to only those facts that are relevant to the instant motions. Plaintiffs formerly worked as Assistant Store Managers for Office Depot. They allege that Office Depot failed to pay them (and others similarly situated) the amount of overtime wages required by the FLSA and certain state wage and hour laws. Since the initiation of this litigation, a number of individuals have opted-in to the FLSA action. In order to opt-in, those individuals were required to sign a consent form agreeing to join the case.

The first group of opt-ins relevant to the instant motions are individuals who failed to disclose their claims against Office Depot during the course of their bankruptcy proceedings. The Court will refer to those individuals collectively as "the Bankruptcy Opt-Ins." Relevant information concerning the Bankruptcy Opt-Ins can be found in the following table:

**Bankruptcy Opt-Ins**

| Name | Bankruptcy Filing Date | Opt-In Date | Bankruptcy Closure Date |
|---|---|---|---|
| Carroll C. Gaylor III | April 25, 2012 | October 7, 2013 | October 11, 2013 |
| James Michael Schindler | May 31, 2013 | September 11, 2013 | September 16, 2013 |
| Anthony John Bowman | July 23, 2013 | September 24, 2013 | February 10, 2014 |
| Samuel Mazzola, Jr. | September 10, 2013 | September 7, 2013 | Still Pending |
| Abur Abner Lyons | June 25, 2014 | October 23, 2014 | December 3, 2015 |
| Tammy Taylor | August 21, 2014 | September 11, 2013 | January 5, 2015 |
| Luis Alberto Lora | August 28, 2014 | September 12, 2013 | January 16, 2015 |
| Michael Jay Smith | October 30, 2014 | September 5, 2013 | Still Pending |
| Dustin K. Carlson | December 9, 2014 | September 24, 2013 | April 15, 2015 |

As of the date that Office Depot filed the instant motions to dismiss, none of the Bankruptcy Opt-Ins had amended their disclosures to include their claims against Office Depot. In light of this failure to disclose, Office Depot argues that the Bankruptcy Opt-Ins' claims should be dismissed under the doctrine of judicial estoppel.

The second group of opt-ins relevant to the instant motions are individuals who have yet to respond to Office Depot's discovery requests. The Court will refer to those individuals collectively as "the Discovery Opt-Ins." In May of 2014, Office Depot was permitted to take limited discovery from 100 of the 300 individuals who had opted into this case. Office Depot served written discovery requests on July 1, 2014, but numerous opt-ins were non-responsive. On August 28, 2014, Office Depot sent a letter to Plaintiffs' counsel explaining that some of the opt-ins had failed to respond. On January 8, 2015, Office Depot sent another letter to Plaintiffs' counsel noting that it still had not received responses from certain opt-ins. Even after sending a third letter to Plaintiffs' counsel, numerous opt-ins failed to respond. Some opt-ins were also unresponsive to Office Depot's attempts at scheduling depositions. In response, United States Magistrate Judge Mark Falk issued an order requiring that seventeen of the non-responsive opt-ins respond to Office Depot's discovery request and/or deposition notices within 30 days. Failure to do so, Judge Falk warned, could result in dismissal. Despite Judge Falk's order, all but four of those opt-ins remained non-responsive. Office Depot now contends that the claims of the 13 Discovery Opt-Ins should be dismissed for failure to prosecute and failure to comply with an order to provide discovery.

## II. DISCUSSION

There are two issues presently before the Court: (1) whether the Bankruptcy Opt-Ins' claims should be dismissed under the doctrine of judicial estoppel; and (2) whether the Discovery Opt-Ins' claims should be dismissed for failure to prosecute and failure to comply with an order to provide discovery. The Court will address these issues in turn.

### A. <u>Bankruptcy Opt-Ins</u>

The Court will assess Office Depot's judicial estoppel argument using the standards governing a motion to dismiss made pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *See, e.g., DePasquale v. Morgan Stanley Smith Barney LLC*, No. 10—6828, 2011 WL 3703110, *2 (D.N.J. Aug. 23, 2011). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Office Depot argues for dismissal on the theory that the Bankruptcy Opt-Ins should be judicially estopped from pursuing their claims. The purpose of judicial estoppel is to prevent a litigant from taking a position in one proceeding that is inconsistent with the position he or she took in a prior proceeding. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). The doctrine provides that, absent good explanation, "a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.*

(quoting 18 Charles A. Wright et al., Federal Practice and Procedure § 4477, at 782). The party arguing for the application of judicial estoppel must demonstrate the following three elements: (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent;" (2) the inconsistent positions must have been taken "*in bad faith*—i.e., with intent to play fast and loose with the court;" and (3) "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp. (Krystal)*, 337 F.3d 314, 319 (3d Cir. 2003) (citing *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001)). When assessing these factors, a court must be mindful that judicial estoppel is an extraordinary remedy to be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P.*, 81 F.3d at 365 (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 (3d Cir. 1988)) (Stapleton, J., dissenting)). However, "[t]he fact that [the] sanction is to be used sparingly does not mean that it is not to be used when appropriate." *Krystal*, 337 F.3d at 325. For the reasons explained below, application of the judicial estoppel doctrine is appropriate in this case.

First, the Bankruptcy Opt-Ins have taken two positions that are irreconcilably inconsistent. For the purposes of judicial estoppel, a party may have taken an irreconcilably inconsistent position where he or she fails to include a known claim in a bankruptcy disclosure statement but then asserts that claim in another litigation. *See Krystal*, 337 F.3d at 320. Indeed, "the 'doctrine of judicial estoppel frequently arises in this context of a failure to list a claim as an asset in a bankruptcy, and the inconsistent pursuit of a disclosed claim.'" *Clark v. Strober—Haddonfield Group, Inc.*, Civ. No. 07-910, 2008 WL 2945972, at *2 (D.N.J. Jul. 29, 2008) (quoting *Castillo v. Coca-Cola Bottling Co. of East. Great Lakes*, Civ. No. 06-183, 2006 WL 1410045, at *2 (E.D.Pa. May 22, 2006)). In both Chapter 7 and Chapter 13 bankruptcy proceedings, debtors have an affirmative duty to disclose contingent assets to the bankruptcy court. *See, e.g., In re Oakley*, 503 B.R. 407, 424 (E.D.Pa. 2013); *Bosco v. C.F.G. Health Sys.*, LLC, No. 04—3517, 2007 WL 1791254, at *3 (D.N.J. June 19, 2007). Contingent assets subject to this disclosure requirement include claims from "any litigation likely to arise in a non-bankruptcy conte[x]t." *Oneida*, 848 F.2d at 417. Moreover, "debtors have an ongoing, affirmative duty to disclose contingent assets to the bankruptcy court." *Coles v. Carlini*, No. 10—6132, 2013 WL 3811642, *8 (D.N.J. July 22, 2013) (citing 11 U.S.C. § 1306(a)(1)). Accordingly, "[i]f the debtor is unaware of contingent claims at the time when she discloses her assets, the debtor has an obligation to amend the bankruptcy schedule and disclose claims once aware of them." *DePasquale*, 2011 WL 3703110, *5.

Here, the Bankruptcy Opt-Ins affirmatively asserted a claim against Office Depot by opting into this action. Notwithstanding their affirmative decision to opt-in, none of the Bankruptcy Opt-Ins disclosed their contingent claims against Office Depot during their bankruptcy proceedings. Moreover, up until now, none of the Bankruptcy Opt-Ins have put forth a shred of evidence demonstrating that they endeavored to amend their disclosures

to include contingent claims against Office Depot.[1]  Finally, the Bankruptcy Opt-Ins' affirmative decision to join this action, coupled with their non-disclosure, reflects an far greater inconsistency than cases in which a debtor fails to disclose claims that he or she has not yet formally pursued.  *Cf. In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999) ("[I]f the debtor has enough information … prior to confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed.") (citations omitted).[2]  In light of these facts, the Court finds that the Bankruptcy Opt-Ins have taken irreconcilably inconsistent positions.

The Court also concludes that the Bankruptcy Opt-Ins took their inconsistent positions in bad faith.  "[A] rebuttable inference of bad faith arises where averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." *Krystal*, 337 F.3d at 321 (citing *Oneida*, 848 F.2d at 416-18).  As explained in the foregoing paragraph, the Bankruptcy Opt-Ins' knowledge of their claims is beyond dispute because they affirmatively agreed to join this case.  Therefore, a rebuttable inference of bad faith has been established.  Seeking to rebut the inference, the Bankruptcy Opt-Ins have filed declarations stating that they were unaware of a duty to include their claims against Office Depot in their bankruptcy disclosures.  However, pleading ignorance of the bankruptcy laws is generally not sufficient to rebut a presumption of bad faith.  *See, e.g., Krystal,* 337 F.3d at 231; *DePasquale*, 2011 WL 3703110, at *3; *Meisinger v. Prudential Ins. Co.*, No. 10—5885, 2011 WL 2036508, at *3 (D.N.J. May 23, 2011).  This is especially true because the Bankruptcy Opt-Ins stood to gain from failing to disclose their claims in bankruptcy—had their lack of disclosure gone unnoticed, they would have been able to pursue their claims against Office Depot without having to make any future recovery available to their creditors.  In light of the obvious motive for concealment, the pithy, self-serving declarations of the Bankruptcy Opt-Ins do not adequately explain why there was a failure to disclose.[3]  Consequently, the second factor for the application of judicial estoppel has been met.

Finally, the Court concludes that any lesser sanction would be inadequate.  As an alternative to dismissal, the Bankruptcy Opt-Ins propose that their claims be stayed for 60

---

[1] Instead, the Bankruptcy Opt-Ins propose that their claims be stayed for 60 days so they can reopen or amend their bankruptcy proceedings.  However, eleventh hour pleas of that sort are not sufficient to overcome a judicial estoppel defense.  *See, e.g., Krystal*, 337 F.3d at 320-21; *DePasquale*, 2011 WL 3703110, at *3.

[2] The Court did not take additional testimony from the Bankruptcy Opt-Ins.  *See Krystal*, 337 F.3d at 325 ("[I]f the pleadings show (1) the fact of non-disclosure of the asset combined with (2) a debtor's obvious knowledge of the existence of the asset, a court need not take testimony in order to make a finding of bad faith.")

[3] Most of the Bankruptcy Opt-Ins have filed declarations pleading ignorance of the bankruptcy laws; however, the declarations are largely boilerplate recitations that provide little in the way pertinent information.  For example, the declarations are silent on whether any of the declarants have been involved in prior bankruptcies other than the ones referenced by Office Depot.  It is at least conceivable that bad faith is more likely be found in cases involving a litigant who has been involved in multiple bankruptcies, the reason being that he or she would be assumed to possess greater knowledge regarding disclosure requirements.  However, because such information is not included in the declarations, the Court need not reach that issue.

days so that they can reopen and/or amend their bankruptcy proceedings. However, the Court finds that such a measure would not be an adequate substitute for the application of judicial estoppel. Adopting the Bankruptcy Opt-Ins' proposal would encourage future debtors to take a "wait and see approach" in which they can conceal assets, hope no one notices, and if they do get caught, ask the court to forgive their failure to disclose. In other words, it would send the message that "a debtor should consider disclosing potential assets only if he is caught stealing them." *Krystal*, 337 F.3d at 325 (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1281, 1288 (11th Cir. 2002)). The Court therefore rejects the Bankruptcy Opt-Ins' proposal and concludes that any lesser sanction would be inadequate. Accordingly, the Bankruptcy Opt-Ins' claims will be dismissed under the doctrine of judicial estoppel.

### B. Discovery Opt-Ins

Federal Rule of Civil Procedure 37(b) provides that a court may dismiss the claims of a party who fails to obey an order to provide discovery. Fed. R. Civ. P. 37(b)(2)(A)(v). Federal Rule of Civil Procedure 41(b) provides that a case may be dismissed where a plaintiff fails to prosecute his claims or comply with prior court orders. Fed. R. Civ. P. 41(b). The Third Circuit has articulated the following six factors for a district court to consider when deciding whether a case should be dismissed pursuant to Rule 41(b) and/or Rule 37(b): (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party…was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). The decision of whether dismissal is warranted lies in the Court's sound discretion. *Emerson v. Theil Coll.*, 296 F.3d 184, 190 (3d Cir. 2002).

After assessing this case under the *Poulis* factors, the Court concludes that the Discovery Opt-Ins' claims should be dismissed.

First, the Discovery Opt-Ins are personally responsible: they were served with discovery requests back in the summer of 2014 and have yet to respond. Nothing on the record or in the briefs suggests that they are not to blame for their refusal to engage in discovery.

Second, Office Depot has been prejudiced by the Discovery Opt-Ins' non-responsiveness. By withholding discovery, the Discovery Opt-Ins have potentially frustrated Office Depot's ability to receive information relevant to its defense in this litigation. For example, Office Depot sought information concerning whether any of the opt-ins had filed for bankruptcy. As made clear by the discussion in the foregoing section, such information is not only potentially relevant to this action, it may in fact be dispositive

of certain opt-ins' claims.  Similarly, Office Depot has not been able to obtain relevant information regarding the Discovery Opt-Ins' job duties.  *See Aquilino v. Home Depot U.S.A., Inc.*, No. 04-CV-4100, 2008 WL 1767015 (D.N.J. Apr. 15, 2008) (citing *Morisky v. Public Srvc. Electric & Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J. 2000)).  Consequently, the prejudice factor weighs in favor of dismissal.

Third, the Discovery Opt-Ins have a history of dilatoriness.  Office Depot initially served its discovery requests in the summer of 2014.  After the Discovery Opt-Ins failed to respond, Office Depot sent numerous letters to Plaintiffs' counsel seeking the requested discovery.  Additionally, United States Magistrate Judge Mark Falk issued an order requiring the Discovery Opt-Ins to respond to Office Depot's discovery requests.  *See Matuska v. NMTC*, No. 10—3529, 2012 WL 1533779, *5 (D.N.J. Apr. 30, 2012) (dismissing FLSA claims made by opt-ins who ignored a court order requiring participation in discovery).  In sum, the Discovery Opt-Ins have engaged in a continual pattern of non-responsiveness.

Fourth, at the very least, the Discovery Opt-Ins' non-responsiveness was willful.  In his order, Judge Falk explicitly warned the Discovery Opt-Ins that a failure to engage in discovery may result in dismissal.  The Discovery Opt-Ins then expressly flouted that court order, thereby demonstrating a willful refusal to provide Office Depot with discovery.

Fifth, no alternative sanction would be appropriate.  Again, the Discovery Opt-Ins have already ignored a court order from a federal judge.  It is difficult to fathom a lesser sanction that would adequately address their non-responsiveness.

Sixth, it is too early to assess the relative merits of the claims and defenses in this case.  FLSA actions tend to be fact-intensive and the Court has yet to be presented with the bulk of the evidence going to the merits of Plaintiffs' claims.

While the sixth *Poulis* factor is a wash, all other factors weigh in favor of dismissal.  Consequently, the Discovery Opt-Ins will be dismissed from this action.

## III.    CONCLUSION

For the foregoing reasons, both of Office Depot's motions are **GRANTED**.  An appropriate order accompanies this decision.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 22, 2015**