## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**KYLE RIVET, JEREMIAH HARRIET, AMANDA NOHRENBERG, BRENT KAUFMAN, and RON BELL, individually and on behalf of all others similarly situated,**

       **Plaintiffs,**

       **v.**

**OFFICE DEPOT, INC.,**

       **Defendant.**

**C.A. No. 2:12-cv-02992**

**<u>Document Electronically Filed</u>**

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL CERTIFICATION OF THE FLSA COLLECTIVE, CERTIFICATION OF THE STATE LAW CLASSES, AND <u>APPOINTMENT OF CLASS COUNSEL</u>

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................1

II. BACKGROUND AND PROCEDURAL HISTORY .........................................2

    A.    Office Depot Used a Common Compensation Policy for All of Its ASMs Nationwide ...........................................................2

    B.    Judge Cavanaugh Rules That Office Depot's Salary Plus Overtime Compensation Plan Violates the FWW ..............................5

III. THE FLSA COLLECTIVE SHOULD BE CERTIFIED FOR TRIAL .............6

    A.    Legal Standard Governing Final Certification of Collective Actions....................................................................6

    B.    The Requirements for Final Certification Are Satisfied Here .............8

        1.  The Factual and Legal Arguments Are Substantially Similar........8

        2.  The Same Defenses Apply To Everyone In the Collective ...........9

        3.  Fairness and Procedural Considerations Favor Final Certification ..............................................................10

IV. THE STATE LAW CLASSES SHOULD BE CERTIFIED FOR TRIAL .......12

    A.    Legal Standard Governing Certification of Rule 23(b)(3) Class Actions....................................................................12

    B.    The Requirements of Rule 23(a) Are Satisfied ..................................14

        1.  Numerosity is Satisfied ................................................14

        2.  Commonality is Satisfied ..............................................14

        3.  Typicality is Satisfied ...................................................15

        4.  Adequacy of Representation is Satisfied ........................16

    C.    The Requirements of Rule 23(b)(3) Are Satisfied ..............................18

        1.  Common Questions Predominate ..................................18

　　　　2.　A Class Action is Superior to Other Methods ...............................19

　　　　3.　Class Members Are Ascertainable..................................................20

　　D.　　The Court Should Appoint Plaintiffs' Counsel as Class Counsel.......20

V.　CONCLUSION.................................................................................................21

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 17, 18

*Andrako v. U.S. Steel Corp.*,
    788 F. Supp. 2d 372 (W.D. Pa. 2011) ...................................................... 10-11

*Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir.1994) ......................... 17

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ........................................................... 15-16, 17

*Blotzer v. L-3 Commc'ns Corp.*,
    No. CV-11-274-TUC-JGZ, 2012 WL 6086931 (D. Ariz. Dec. 6, 2012) ...... 3

*Bradford v. Bed Bath & Beyond, Inc.*,
    184 F. Supp. 2d 1342 (N.D. Ga. 2002) ...................................................... 11

*Brumley v. Camin Cargo Control, Inc.*,
    No. CIVA 08-1798 (JLL), 2010 WL 1644066 (D.N.J. Apr. 22, 2010) ........ 6

*Chiang v. Veneman*, 385 F.3d 256 (3d Cir 2004) ..................................................18

*Deangelis v. Bally's Park Place, Inc.*, 298 F.R.D. 188 (D.N.J. 2014) ................... 20

*Garcia v. Freedom Mortg. Corp.*, 790 F. Supp. 2d 283 (D.N.J. 2011) ................... 7

*Gibbons v. Office Depot, Inc.*,
    No. 12-cv-02992, 2013 WL 1890265 (D.N.J. Feb. 22, 2013) ...........1, 4, 5, 9

*Goodman v. Burlington Coat Factory*,
    No. 11 Civ. 4395, 2012 WL 5944000 (D.N.J. Nov. 20, 2012) .................... 7

*Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989) .......................................6, 11

iii

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*,
  795 F.3d 380 (3d Cir. 2015) .................................................................. 13, 14

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee
  Second Mortg. Loan Litig.*,
  418 F.3d 277 (3d Cir. 2005) .......................................................... 19

*In re FedEx Ground Package Sys., Empl. Practices Litig.*,
  273 F.R.D. 424 (N.D. Ind. 2008) .............................................. 13

*In re Honeywell*, 211 F.R.D. 255 (D.N.J. 2002) ..................................... 19

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ........................................................ 18

*In re Kirschner Med. Corp.Sec. Litig.*, 139 F.R.D. 74 (D. Md. 1991) .................. 14

*In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3d Cir. 2002) ............................ 18

*In re Prudential Ins. Co. Am. Sales Pract. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................ 19

*In re Schering Plough Corp.*, 589 F.3d 585 (3d Cir. 2009) ...................... 14, 15, 16

*Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) ..................................... 12

*Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998) ........................ 19

*Lozoya v. AllPhase Landscape Constr., Inc.*,
  No. 12-cv-1048-JLK, 2015 WL 1524639 (D. Colo. Mar. 31, 2015) .......... 13

*Massie v. U.S. HUD*, 246 F.R.D. 490 (W.D. Pa. 2007) ......................................... 16

*Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008) ... ................8, 10

*Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347 (D. Conn. 2013) ............. 7

*Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010 (D. Minn. 2007) ......... 10, 16

*Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) ........................15

*O'Brien v. Town of Agawam*, 350 F.3d 279 (1st Cir. 2003) .................................... 3

*Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345 (S.D. Fla. 2007).........11

*Ramirez v. RDO-BOS Farms, LLC*,
   No. 06-cv-174, 2007 WL 273604 (D. Or. Jan. 23, 2007) ...........................13

*Regan v. City of Charleston*,
   No. 2:13-CV-3046-PMD, 2015 WL 6727079 (D.S.C. Nov. 3, 2015) .... 8, 10

*Ruffin v. Avis Budget Car Rental, L.L.C.*,
   No. 11-cv-1069, 2014 WL 294675 (D.N.J. Jan. 27, 2014) ..................7, 8, 11

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................14

*Stillman v. Staples, Inc.*,
   No. 07-cv-849(KSH), 2009 WL 1437817 (D.N.J. May 15, 2009) ............7, 8

*Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189 (3d Cir. 2011) ...................... 7

*Troy v. Kehe Food Distribs.*, 276 F.R.D. 642 (W.D. Wash. 2011) .........................13

*Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245 (S.D.N.Y. 2013).........................5

*Winoff Indus. v. Stone Container Corp.* (*In re Linerboard Antitrust Litig.*),
   305 F.3d 145 (3d Cir. 2002) ........................................................................18

*Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009).................15

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012) .............................6, 7

## STATUTES AND OTHER AUTHORITIES

29 U.S.C. § 207(a) .................................................................................................3

29 U.S.C. § 216(b) ..............................................................................................6, 21

29 C.F.R. § 778.114(a) .......................................................................................3, 4

Colorado Wage Act, COLO. REV. STAT. ANN. § 8-6-118.....................................3, 12

7 Colo. Code Regs. § 1103-1:2, *et seq*.....................................................................12

Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL.
    § 3-401, *et seq.* ...........................................................................................3, 12

Md. Code Ann., Lab. & Empl. § 3-401 ......................................................................12

Oregon Minimum Wage Act, OR. REV. STAT. ANN. § 653.010, *et seq*..............3, 12

Washington Minimum Wage Act, WASH. REV. CODE ANN.
    § 49.52.050, *et seq*. ....................................................................................3, 12

Fed. R. Civ. P. 23(a)............................................................................... *passim*

Fed. R. Civ. P. 23(a)(4) ....................................................................... 16, 21

Fed. R. Civ. P. 23(b)(3) .......................................................................... *passim*

Fed. R. Civ. P. 23(g) ............................................................................... 20

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................20

Fed. R. Civ. P. 30(b)(6) ...........................................................................2

7AA Federal Practice and Procedure § 1778.........................................................18

76 Fed. Reg. 18,832 (Apr. 5, 2011) .........................................................................6

## I.   <u>INTRODUCTION</u>

If any case is suitable for class and collective treatment, this is it.  Plaintiffs were Assistant Store Managers ("ASMs") who were all compensated by Office Depot pursuant to a common pay policy.  Plaintiffs claim that this policy violated the Fair Labor Standards Act ("FLSA").  Specifically, Plaintiffs claim that Office Depot improperly paid them overtime at a rate of one-half of the regularly hourly rate when, under the FLSA, Office Depot should have paid them overtime at a rate of time and one-half of the regular hourly rate.

At the outset of the case, Judge Cavanaugh, to whom this case was previously assigned, rejected Office Depot's argument that its pay policy was valid.  *See Gibbons v. Office Depot, Inc.*, No. 12-cv-02992, 2013 WL 1890265, at *3 (D.N.J. Feb. 22, 2013) (Cavanaugh, J.) (ECF No. 34).  The terms of the pay policy are not in dispute and no individual circumstances of any ASM would change the legal analysis.  Accordingly, and given Judge Cavanaugh's ruling, hundreds of ASMs throughout the country—including the 300-plus individuals who joined this case as members of the conditionally certified collective action— could bring identical cases against Office Depot—and win.  That is plain to Office Depot, which has since discontinued its half-time pay plan and now pays its ASMs time and one-half.  But it makes no practical sense for hundreds of juries to decide what Office Depot knows and what Judge Cavanaugh has already concluded.

Class and collective actions are designed to prevent just this kind of unnecessary duplication of resources.

Indeed, Office Depot has implicitly conceded that aggregate resolution is needed here. It has argued, repeatedly, that its anticipated summary judgment motion seeking reconsideration of Judge Cavanaugh's decision will resolve this case in one fell swoop for every person who opted into the collective action, and for every absent class member. Inasmuch as this case revolves around a single common issue as to which the parties assert common claims and defenses, Plaintiffs respectfully request that the Court certify the already-conditionally certified opt-in FLSA collective action for trial purposes, and also certify opt-out Federal Rule of Civil Procedure 23(b)(3) class actions under the analogous overtime laws of Colorado, Maryland, Oregon, and Washington for adjudication of the same core claim as to the legality of Office Depot's pay policy.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Office Depot Used a Common Compensation Policy for All of Its ASMs Nationwide

Federal and state overtime laws distinguish between "exempt" employees, who are not entitled to overtime, and non-exempt employees, who are entitled to overtime. From late 2005 until 2012, Office Depot classified all of its ASMs (except those in Alaska and California) as "non-exempt" employees. *See* Declaration of Seth R. Lesser ("Lesser Decl."), Ex. 1, FED. R. CIV. P. 30(b)(6)

Deposition of Lynn Gross ("Gross Dep.") at 24:18-25:8 (confirming ASM position was changed from salary exempt to salary non-exempt in 2005).

Generally, federal and state law require employers to pay overtime at time and one-half of an employee's hourly salary. *See* 29 U.S.C. § 207(a); Colo. Rev. Stat. Ann. § 8-6-118, *et seq*.; Md. Code Ann., Lab. & Empl. § 3-401, *et seq*.; Or. Rev. Stat. Ann. § 653.010, *et seq*.; Wash. Rev. Code. Ann. § 49.52.050, *et seq*. However, in certain well-defined cases, employers can take advantage of "fluctuating workweek" overtime, also referred to as "half-time overtime" or the "FWW." *See* 29 C.F.R. § 778.114(a). Under the FWW, an employee's hourly overtime rate goes down as the employee's overtime hours go up.

One court has explained the consequences of FWW overtime as follows: "the difference between the FWW method and the traditional time and one-half method can result in an employee being paid seventy-one percent less for overtime over a given year, and under the FWW method, the effective overtime hourly rate of an employee working sixty-one hours or more is less than the non-overtime hourly rate of an employee who worked no more than forty hours per week." *Blotzer v. L-3 Commc'ns Corp.*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931, at *11 (D. Ariz. Dec. 6, 2012).

"For obvious reasons," *O'Brien v. Town of Agawam*, 350 F.3d 279, 288 (1st Cir. 2003), employers cannot simply decide on a whim to pay FWW overtime.

Instead, they must satisfy each of the requirements set forth in the applicable regulation, 29 C.F.R. § 778.114(a).  *See also Gibbons*, 2013 WL 1890265, at *2 (setting forth the requirements of the FWW).  One such requirement is that employees "receive a fixed weekly salary that remains the same regardless of [the] number of hours [the] employee works during [the] week."  *Gibbons*, 2013 WL 1890265, at *2.

Office Depot's method of compensating ASMs was "modeled after," but not identical to, the FWW.  *Id.*  Critically for present purposes, Office Depot provided ASMs with different amounts of holiday pay depending on "the total number of hours worked within [the applicable] pay period."  *Id.* at *3; *see also* Lesser Decl., Ex. 2, Declaration of Loan Ellis In Support of Defendant's Motion to Dismiss the Complaint ("Ellis Decl."), Exhibit A ("FAQs Version 3") (ECF No. 11-2) (detailing requirements for receiving Holiday Pay).

Office Depot called its pay plan for ASMs the "Salary Plus Overtime Compensation" plan (hereafter the "Salary Plan").  Lesser Decl., Ex. 2, Ellis Decl. ¶¶ 4, 6.  Office Depot used this same plan for all of its ASMs nationwide from late 2005 until February 26, 2012, when it began paying its ASMs overtime at time and one-half.  *See* Lesser Decl., Ex. 1, Gross Dep. at 19:11-21; Lesser Decl., Ex. 3, Office Depot Assistant Store Manager Conversion to Hourly + 1.5 OT, Bates OD000931.

**B.     Judge Cavanaugh Ruled That Office Depot's Salary Plus Overtime Compensation Plan Violates the FWW**

On May 18, 2012, Plaintiff Constance Gibbons filed a Complaint asserting an opt-out collective action claim for unpaid overtime under the FLSA, and a Rule 23 opt-out class action claim under analogous state law.  (ECF No. 1).  Subsequently, more than 300 individuals opted into the collective.  Plaintiffs' Second Amended Complaint ("SAC") (the operative pleading), (ECF. No. 178), includes an FLSA collective action claim, as well as Rule 23 claims under the overtime laws of Colorado, Maryland, Oregon, and Washington.

From the original Complaint until the current SAC, the principal issue in this case has been the validity of Office Depot's Salary Plan under federal and state overtime law.  Recognizing this, Office Depot moved to dismiss the Complaint on the ground that its Salary Plan did not violate the FWW.  Judge Cavanaugh, to whom the case was then assigned, rejected Office Depot's argument.

Judge Cavanaugh held that the Salary Plan violated the FWW because of the Salary Plan's holiday pay provisions, which provided hours-based bonuses.  Judge Cavanaugh held that such bonuses were "impermissible under the 'fixed salary' requirement of [the FWW]."  *Gibbons*, 2013 WL 1890265, at *3.  Judge Cavanaugh's ruling was consistent with all the prior rulings in this area of law, as well as a Department of Labor rulemaking decision.  *See Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 266 (S.D.N.Y. 2013) (holding that performance-based

5

bonuses incompatible with the FWW); *Brumley v. Camin Cargo Control, Inc.*, No. CIVA 08-1798 (JLL), 2010 WL 1644066, at *6 (D.N.J. Apr. 22, 2010) (finding holiday pay "results in the absence of the 'fixed salary' required by the [FWW] regulation"); Department of Labor Final Rule, 76 Fed. Reg. 18,832, 18,853 (Apr. 5, 2011) (concluding that hours-based premium payments are impermissible under the FWW).

## III.    THE FLSA COLLECTIVE SHOULD BE CERTIFIED FOR TRIAL

### A.    Legal Standard Governing Final Certification of Collective Actions

The FLSA allows "similarly situated" employees to bring suit together by opting into a collective action. 29 U.S.C. § 216(b). Courts favor collective actions because they allow for the "efficient resolution in one proceeding of common issues of law and fact," in addition to "lower[ing] individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). Collective actions proceed in two stages. In the first stage, courts order notice to be sent to potential collective action members. *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). In the second stage—the stage at issue here—courts decide whether to finally certify for trial purposes a collective composed of the named plaintiffs and the individuals who opt into the case. *Id.*

Final certification will issue where plaintiffs shoulder their burden to demonstrate by a preponderance of evidence that "***the plaintiffs who have opted in***

are in fact similarly situated to the named plaintiffs." *Id.* at 537 (internal quotations and citation omitted) (emphasis added); *accord Goodman v. Burlington Coat Factory*, No. 11 Civ. 4395, 2012 WL 5944000, at *3 (D.N.J. Nov. 20, 2012) (citing *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011), *rev'd on other grounds sub nom. Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)); *Garcia v. Freedom Mortgage Corp*, 790 F. Supp. 2d 283, 286 (D.N.J. 2011). As Third Circuit Judge Patty Shwartz has recognized, "the similarly situated standard of § 216(b) of the [FLSA] does not require that plaintiffs be identical." *Stillman v. Staples, Inc.*, No. 07-cv-849(KSH), 2009 WL 1437817, at *18 (D.N.J. May 15, 2009) (quotation omitted); *accord Ruffin v. Avis Budget Car Rental, L.L.C.*, No. 11-cv-1069, 2014 WL 294675, at *4 (D.N.J. Jan. 27, 2014) (denying decertification); *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 362 (D. Conn. 2013) (denying decertification).

In *Zavala*, the Third Circuit stated that the factors to consider in a final certification analysis "include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536-37. Courts in this Circuit consider three additional factors: "(1) the disparate factual and employment settings of the individual

7

plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Ruffin*, 2014 WL 294675, at *2 (internal quotations and citation omitted).

There is no question that collective action cases can—and have—proceeded to trial.  In fact, several years ago, then-United States Magistrate Judge Patty Shwartz presided over an FLSA collective action trial in which the jury returned a plaintiff's verdict.  *Stillman*, 2009 WL 1437817, at *9-10 (upholding liability and damages in retail chain store misclassification collective action of 342 ASMs); *see also Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1258-85 (11th Cir. 2008) (upholding liability and damages in retail chain store misclassification collective action of 1,424 store managers).

### B.    The Requirements for Final Certification Are Satisfied Here

#### 1.    The Factual and Legal Arguments Are Substantially Similar

The Court should grant final certification because the relevant factual and legal arguments are identical with respect to each members of the collective: every person who opted into this case was paid with the Salary Plan that Judge Cavanaugh found to violate the FWW, and each person seeks unpaid overtime based on that violation.  Faced with a nearly identical set of facts, another federal court recently granted final certification (technically, it denied decertification, which amounts to the same thing).  *Regan v. City of Charleston*, No. 2:13-CV-

8

3046-PMD, 2015 WL 6727079, at *2, 4 (D.S.C. Nov. 3, 2015) (recognizing that "[p]laintiffs are similarly situated if they were victims of a common policy or plan that violated the law," and noting that "all class members were subject to the same [] pay plan") (internal quotations and citation omitted). It makes sense to adjudicate this common issue in a single proceeding rather than hundreds of individual proceedings.

### 2. The Same Defenses Apply To Everyone In the Collective

Office Depot's primary defense is that its Salary Plan does not violate the FWW. While that defense should never see the light of day at trial because it was already rejected by this Court, *Gibbons*, 2013 WL 1890265, at *3, the point is that even if the defense was viable, which it is not, it would apply uniformly to every member of the collective.

Somewhat half-heartedly, Office Depot has also tried to claim that it owes none of the ASMs at issue any money at all because, while it paid them half-time overtime, it really did not need to pay them any overtime because the ASMs did the work of exempt employees. *See, e.g.*, ECF No. 58-1. This "reverse misclassification" defense (namely, that although the company classified the employees as exempt, it did not really need to do so) has never been accepted by any court as a valid way to defeat a claim for improperly or deficiently paid overtime. Office Depot's argument is utterly "disingenuous," and obviously

9

created solely for litigation purposes.  *See Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for Caribou, on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").  In fact, Office Depot would be estopped from making such a reverse misclassification argument.  But even if Office Depot were to press this contention forward, its ability to do so would present a core common question that would need to be addressed on an aggregate class and/or collective basis.

### 3. Fairness and Procedural Considerations Favor Final Certification

"There is nothing unfair about litigating a single corporate decision in a single collective action . . . ."  *Morgan*, 551 F.3d at 1264; *see also Regan*, 2015 WL 6727079, at *4 ("[F]airness and procedural considerations weigh against decertification. Allowing the class members to litigate their claims in one action will lower parties' costs and promote judicial efficiency by allowing the court to resolve remaining common issues of law and fact in a single lawsuit.").

If final certification is not granted, one of two things will happen.  The first possibility is that members of the collective will file roughly 300 individual cases that look identical to this case.  Some of those cases will return to this Court.  That is the opposite of efficiency.  *See Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d

372, 383 (W.D. Pa. 2011) ("Decertifying this case would potentially result in more than 250 individual trials, which not only is the worst possible outcome in terms of efficiency, but also would place each opt-in Plaintiff back at square one without the benefit of pooled resources to resolve the common liability questions in this case.") (internal quotations and citation omitted); *Ruffin*, 2014 WL 294675, at *4 (citing *Hoffmann-La Roche*, 493 U.S. at 170) (decertifying collective would be unfair because it would introduce inefficiencies and increase costs).

The second possibility is that members of the collective action will not pursue their claims because the value of those claims are low compared to litigation costs. *See Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1364 (S.D. Fla. 2007) ("Defendant's suggestion that few Plaintiffs would re-file is the precise reason Congress authorized class action treatment for these types of cases"); *Bradford v. Bed Bath & Beyond, Inc., 18*4 F. Supp. 2d 1342, 1351 (N.D. Ga. 2002) ("As a practical matter, [p]laintiffs can hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action"). This second possibility is clearly unfair and undesirable.

In the final analysis, final certification is proper, fair, and efficient because it will allow this court, once and for all, to resolve a single issue common to all members of the collective.

## IV.    THE STATE LAW CLASSES SHOULD BE CERTIFIED FOR TRIAL

Because ASMs in Colorado, Maryland, Oregon, and Washington were paid with the same Salary Plan Office Depot used nationwide (except in Alaska and California), the Court should certify Rule 23(b)(3) classes composed of ASMs in each of these states who were paid pursuant to the Salary Plan at any time between May 9, 2011 and February 25, 2012 (the "State Law Classes").[1]  The Court should further designate the Named Plaintiffs as representatives of their respective state classes, and appoint Plaintiffs' Counsel as Class Counsel for the State Law Classes.[2]

### A.    Legal Standard Governing Certification of Rule 23(b)(3) Class Actions

A class may be certified under Federal Rule of Civil Procedure 23(b)(3) where the requirements of both Rule 23(a) and Rule 23(b)(3) are met.  Rule 23(a) is satisfied where: (1) the class is so numerous that joinder of all members is

---

[1] The Colorado Class claims are brought under the Colorado Wage Act, Colo. Rev. Stat. Ann. § 8-6-118, *et seq.* and 7 Colo. Code Regs. § 1103-1:2, *et seq.* ("CMWA").  The Maryland class claims are brought under Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL. § 3-401, *et seq.* ("MWHL").  The Oregon class claims are brought under the Oregon Minimum Wage Act, OR. REV. STAT. ANN. § 653.010, *et seq.* ("OWL").  The Washington Class claims are brought under the Washington Minimum Wage Act, WASH. REV. CODE. ANN. § 49.52.050, *et seq.* ("WMWA").

[2] The Third Circuit has held that FLSA collective actions and Rule 23 class actions can proceed simultaneously. *Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012).

impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims of the representative parties are typical of the claims of the class (typicality); and (4) the representatives will adequately and fairly protect the interests of the class.  FED. R. CIV. P. 23(a).

Rule 23(b)(3) is satisfied where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, [] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," FED. R. CIV. P. 23(b)(3), and also that the class members are ascertainable, *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 392 (3d Cir. 2015).

Courts across the country routinely certify Rule 23(b)(3) classes where employers violate state wage laws.  *See, e.g.*, *Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-cv-1048-JLK, 2015 WL 1524639, at *1 (D. Colo. Mar. 31, 2015) (Colorado law); *In re FedEx Ground Package Sys., Empl. Practices Litig.*, 273 F.R.D. 424, 462-64 (N.D. Ind. 2008) (Maryland law); *Troy v. Kehe Food Distribs.*, 276 F.R.D. 642, 658 (W.D. Wash. 2011) (Washington law); *Ramirez v. RDO-BOS Farms, LLC*, No. 06-cv-174, 2007 WL 273604, at *2 (D. Or. Jan. 23, 2007) (Oregon law).  The Court should do the same here.

### B.    The Requirements of Rule 23(a) Are Satisfied

### 1.    Numerosity is Satisfied

There is no certain minimum number of plaintiffs required to bring a class action suit.  *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001).  It is well-settled, however, that "a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable."  *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991).  Discovery has shown that there are 65 class members in Colorado, 49 in Maryland, 35 in Oregon, and 55 in Washington.  Plaintiffs satisfy the numerosity requirement of Rule 23(a).  *See* Lesser Decl., Ex. 4, July 7, 2015 Email from A. Heckman to Seth Lesser attaching list of potential Rule 23 class members.  It follows that numerosity is satisfied.

### 2.    Commonality is Satisfied

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class," *In re Schering Plough Corp.*, 589 F.3d 585, 596-97 (3d Cir. 2009).  "The common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d at 398 (internal quotations and citations omitted).  "It is well established that only one question of

14

law or fact in common is necessary . . . ." *Schering Plough*, 589 F.3d at 597 n.10.

Here, the Named Plaintiffs allege, on behalf of the State Law Classes, that Office Depot failed to pay them the overtime required by the laws of the states of Colorado, Maryland, Oregon, and Washington. As such, common questions include, but are not limited to:

(a)     Whether Office Depot's Salary Plan violates the laws of the States of Colorado, Maryland, Oregon, and Washington; and

(b)     The nature and extent of class-wide injury and the appropriate measure of damages for the Classes.

These common questions satisfy the commonality requirement of Rule 23(a). *See, e.g.*, *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 204 (N.D. Cal. 2009) ("[W]here the employer has a uniform policy that is uniformly applied, the appropriateness of class certification is easily established.") (internal quotations and citation omitted); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) (commonality satisfied where "[a]ll potential class members are alleged to have been harmed by a common practice—defendants' failure to adequately compensate employees for overtime hours").

### 3.     Typicality is Satisfied

The typicality requirement is fulfilled if "the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d

291, 295-96 (3d Cir. 2006) (citation omitted).  Specifically:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d at 599.

Here, the Named Plaintiffs' claims are that same as the putative state class members' claims because they were all subject to the same pay policy and because they allege violation of the same laws.  No unique defenses apply to the Named Plaintiffs' claims.  Finally, Plaintiffs share the same incentives as the absent State Law Class Members to demonstrate Office Depot's culpability. *See Massie v. U.S. HUD*, 246 F.R.D. 490, 494-95 (W.D. Pa. 2007) ("If Plaintiffs were to prevail in this litigation, all members of the class would gain the same opportunities . . . ."). Accordingly, typicality is satisfied.  *See, e.g.*, *Nerland*, 564 F. Supp. 2d at 1031 (certifying class of store managers who "typically worked hours that would qualify as overtime" and challenged their classification as exempt under state law).

### 4.    Adequacy of Representation is Satisfied

Plaintiffs also meet Rule 23(a)(4)'s adequacy of representation requirement. The Supreme Court has counseled that this element "serves to uncover conflicts of interest between named parties and the class they seek to represent," and serves as

a catch-all requirement that "tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal quotations and citation omitted). The adequacy requirement involves a two pronged inquiry: (1) it looks to whether the representative's interests are antagonistic to those of the class; and (2) it considers whether the attorneys for the class representatives are capable of and qualified to represent the entire class.  *See Beck*, 457 F.3d at 296; *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). Here, the Named Plaintiffs clearly satisfy both prongs of the adequacy test. No antagonism exists between the Named Plaintiffs and the proposed State Law Classes, as both share exactly the same incentives to demonstrate Office Depot's culpability.  Moreover, through their individual depositions, discovery and assistance to counsel, each Named Plaintiff has demonstrated a commitment to pursuing this case both on his or her own behalf and on behalf of absent Class Members.

The Named Plaintiffs have also retained qualified attorneys with broad-based, multi-jurisdictional experience in complex class actions and wage and hour litigation.  *See* Lesser Decl. ¶¶ 5-8 & Exs. 5-8 (resumes of Klafter Olson & Lesser, LLP, Berger & Montague, P.C., Whitfield Byson & Mason LLP, and Locks Law Firm).  It follows that all of the requirements of Rule 23(a) are satisfied.

### C.    The Requirements of Rule 23(b)(3) Are Satisfied

### 1.    Common Questions Predominate

Under Third Circuit law, "[p]redominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,'" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2009) (quoting *Amchem*, 521 U.S. at 623).  Predominance is satisfied "[a]s long as a sufficient constellation of common issues binds class members together."  *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002) (internal quotations omitted).  "In order to predominate, the common issues must constitute a 'significant part' of the individual cases." *Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004), *abrogated on other grounds*, *Marcus v. BMW of N. Am., L.L.C.*, 687 F.3d 583 (3d Cir. 2012); *see also* 7AA Federal Practice and Procedure § 1778 ("When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.").

A district court's predominance analysis must "predict[] how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d at 311 (citations omitted). As shown herein, the principal questions to be determined in this litigation are plainly predominated by the common issues of fact and law that arise

from the Office Depot's uniform Salary Plan.

## 2.    A Class Action is Superior to Other Methods

"The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 309 (3d Cir. 2005) (internal quotations and citation omitted).  Four primary factors are to be considered in determining whether a class action is superior pursuant to FED. R. CIV. P. 23(b)(3): (1) the interests of the class members in individually controlling separate actions; (2) the extent and nature of any litigation already commenced by the class; (3) the desirability of concentrating the litigation of the claims in the particular forum in which the class action is pending; and (4) difficulties likely to be encountered in the management of the class action. FED. R. CIV. P. 23(b)(3); *In re Honeywell*, 211 F.R.D. 255, 267 (D.N.J. 2002).

Class treatment is superior to individual treatment here. There is a single central issue in this case, namely the alleged invalidity of Office Depot's Salary Plan.  If the case does not proceed as a class action, ASMs might elect not to pursue plainly meritorious claims because their claims are relatively modest compared to the cost of litigation.  *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Pract. Litig. Agent Actions*, 148 F.3d 283, 314-16 (3d Cir. 1998) (class actions superior where individual claims are relatively small, there is a large volume of

19

such claims, claimants lack a compelling interest in controlling their own litigation, and judicial resources would be strained if individual claims were filed); *Deangelis v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 202 (D.N.J. 2014) (holding class action superior method where class members' individual claims were may only have been a few thousand dollars each and class members expressed concerns about potential job losses).  It is desirable to keep all of these claims in a single case.

Finally, Class Members can be readily identified for notice purposes from Defendant's records, and no management issues uncommon to class actions as a whole are implicated.  This makes the action well-suited for class treatment.

### 3.     Class Members Are Ascertainable

As Office Depot employed each of the absent class members, Office Depot knows their identities.  It follows that the ascertainability requirement is satisfied, and that Rule 23(b)(3) is satisfied.  The Court should certify the State Law classes.

### D.     The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Finally, the Court should appoint class counsel under Rule 23(g).  Rule 23(g) requires the Court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A).

As discussed above in relation to Rule 23(a)(4), Named Plaintiffs' counsel are highly experienced in litigation of this type, and have demonstrated their commitment to representing the class. *See* Lesser Decl. ¶¶ 5-8 & Exs. 6-9. Accordingly, the Court should appoint Klafter Olsen & Lesser LLP, Berger & Montague, P.C., Whitfield Bryson & Mason LLP, and Locks Law Firm as Class Counsel in this matter.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should finally certify the FLSA collective action pursuant to 29 U.S.C. § 216(b), certify the proposed State Law Classes pursuant to Rule 23, designate the named Plaintiffs as Class Representatives of the State Law Classes, and appoint Named Plaintiffs' counsel as Class Counsel.

Dated:  February 16, 2016                Respectfully submitted,


_____
Seth R. Lesser
Fran L. Rudich*
Michael H. Reed
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:  (914) 934-9200

Shanon J. Carson*
Sarah R. Schalman-Bergen*

Alexandra K. Piazza
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Telephone:  (215) 875-3000

Gary Mason*
Jason Rathod*
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Telephone:  (202) 429-2290

Michael A. Galpern
Andrew P. Bell
Priscilla E. Jimenez
LOCKS LAW FIRM
Liberty View Building
457 Haddonfield Road, Suite 500
Cherry Hill, New Jersey 08002
Telephone:  (856) 663-8200

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs*