**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KYLE RIVET, JEREMIAH HARRIET, AMANDA NOHRENBERG, BRENT KAUFMAN, and RON BELL** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**OFFICE DEPOT, INC.,**<br><br>Defendant. | Civ. No. 2:12-02992 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiffs in this case worked as Assistant Store Managers ("ASMs") for Office Depot during a period ranging from early 2000 to July of 2013. Seeking to bring claims on behalf of themselves and other ASMs, they allege that Office Depot's method for paying overtime violated state and federal wage and hour laws. Pursuant to 29 U.S.C. § 216(b), Plaintiffs move for final certification of a collective action that alleges violations of the Fair Labor Standards Act ("FLSA"). Under Federal Rule of Civil Procedure 23, Plaintiffs also move for certification of four proposed classes (collectively, "the State Law Classes") that allege violations of state wage and hour laws. Office Depot opposes both motions, while also moving to decertify the FLSA conditional collective action.

      For the reasons that follow, Plaintiffs' motion for final certification of the FLSA collective action will be **GRANTED** and Office Depot's motion for decertification will be **DENIED**. Plaintiffs' motion for class certification of the State Law Classes will be **GRANTED in part and DENIED in part**; the motion will be **GRANTED** as to the Colorado, Maryland, and Washington Classes, but will be **DENIED WITHOUT PREJUDICE** as to the Oregon Class.

1

**I.     BACKGROUND**

This action arises out of an overtime pay policy that Office Depot had in place from late 2005 to 2012.  *See* Declaration of Seth R. Lesser in Support of Class Cert ("Lesser Class Decl."), Ex. 1.  While the policy provided that ASMs were non-exempt employees entitled to overtime, it paid overtime pursuant to a "fluctuating workweek" or "FWW" plan.  *See* Pls.' Mot. at 4.  Accordingly, the Court will refer to the pay policy as the "FWW Plan."

Typically, non-exempt employees will be paid "time and a half overtime," meaning they will be paid at one and one-half times their normal hourly rate for every overtime hour worked.  *See, e.g.,* 29 U.S.C. §207(a).  Under the FWW Plan, however, the hourly overtime rate is reached by dividing total wages earned per week by the total numbers of hours worked that week.  The resulting figure is termed "the regular rate."   Office Depot then pays ASMs for hours worked overtime by using the regular rate instead of the time and one-half rate.  *See* Opinion on MTD, at 3, ECF No. 34.  Consequently, the hourly overtime rate decreases as the total number of overtime hours increases.  *See* Mot. for Class Cert. at 3.

The FLSA and the relevant state wage and hour laws permit use of the FWW only where all of the following criteria are met:  (1) the employee's hours fluctuate week to week; (2) the employee receives a fixed weekly salary that remains the same regardless of the number of hours worked; (3) the fixed paid amount must be at a rate not less than the legal minimum wage; (4) the employer and employee must have a clear, mutual understanding that the employee will receive a fixed weekly salary regardless of hours worked; and (5) for the time worked in excess of 40 hours in a given week, the employee must receive a 50% overtime premium in addition to the fixed weekly salary. *See* 29 C.F.R. § 778.114(a).

Plaintiffs contend that when the FWW Plan was in place, an ASM's non-overtime salary fluctuated depending on how his or her work schedule coincided with certain holidays.  Plaintiffs further argue that because ASMs received varying amounts of non-overtime "holiday pay" based on their work schedules, they did not receive a fixed weekly salary, which means the FWW Plan was illegal.  Thus, Plaintiffs are of the position that ASMs were entitled to time and one-half overtime, which would have exceeded the amounts paid under the FWW Plan.  *See* Pls.' Opp. to MTD, ECF No. 22.

In July of 2012, Office Depot moved to dismiss Plaintiffs' complaint.  *See* ECF No. 11.  In a February 22, 2013 opinion and order, The Honorable Dennis M. Cavanaugh granted in part and denied in part Office Depot's motion.  *See* ECF No. 34. While Judge Cavanaugh dismissed Plaintiffs' claims for violation of the New Jersey Wage and Hour Law, it held that Plaintiffs had stated a claim under the FLSA.  Taking Plaintiffs'

2

allegations as true, Judge Cavanagh explained that "Office Depot makes additional payments to ASMs dependent upon the hours worked by the ASMs prior to the time the holiday pay is administered and such payments are impermissible under the 'fixed' salary requirement of 29 C.F.R. § 778.114(a)." Op. dated Feb. 22, 2013, at 5, ECF No. 34. Plaintiffs later amended their complaint to add claims under the wage and hour laws of the following states: Colorado, Maryland, Oregon, and Washington. *See* ECF No. 178. Plaintiffs wish to bring separate class actions on behalf of ASMs who worked in each of those states.

On August 19, 2013, the parties stipulated to conditional certification of the FLSA collective action. See ECF No. 114-1. Under the terms of the stipulation, Office Depot retained the right to move for decertification of the collective action pursuant to 29 U.S.C. § 216(b). *Id.* Now, Office Depot moves to decertify the collective action, while Plaintiffs seek final certification. *See* ECF Nos. 225, 228. Plaintiffs also move for Rule 23 certification of the State Law Classes. *See* ECF No. 22.

## II. FLSA CERTIFICATION

The Court will first decide the FLSA motions. In support of decertification, Office Depot argues that the FWW Plan was not illegal; but even if it were, Plaintiffs could prevail on their claims only if they qualified as non-exempt employees during the relevant period. Office Depot further argues that its decision to treat ASMs as exempt – and, in turn, pay them overtime – merely was a business maneuver designed to avoid future litigation costs. In reality, Office Depot contends, ASMs were "exempt" employees who enjoyed a wide range of discretion and authority. Consequently, Office Depot was not required to pay its ASMs *any* overtime, let alone overtime that complied with the wage and hour laws.

In light of that position, Office Depot argues that in order to prevail, Plaintiffs first must prove that ASMs were non-exempt employees entitled to overtime. However, the question of whether an employee qualifies as non-exempt is a fact-intensive inquiry that will largely depend on each ASM's individual circumstances of employment. Specifically, ASMs differed in their levels of supervisory responsibility; the extent to which they hired, trained, disciplined, and reviewed other employees; and the degree to which they assumed other managerial functions. Therefore, the argument goes, Plaintiffs' claims cannot be resolved on a collective basis.

Plaintiffs take issue with what they describe as Office Depot's "reverse misclassification defense." They argue that a reverse misclassification defense has never been recognized by any other court, and should be rejected here accordingly. Plaintiffs further contend that even if the defense did exist, the doctrine of quasi-estoppel precludes Office Depot from asserting it in this case. Finally, Plaintiffs argue that even if a reverse misclassification defense were viable, final certification would be appropriate because ASMs are similarly situated.

After reviewing the record, the Court concludes that ASMs are similarly situated for the purposes of final certification under the FLSA. Therefore, the Court is not presently required to decide whether Office Depot's reverse misclassification defense is viable. Should Plaintiffs continue to believe that the reverse misclassification defense must be rejected, they may re-raise that position at summary judgment.[1]

In order to meet its burden for final certification, Plaintiffs must establish by a preponderance of the evidence that they and other opt-in ASMs are "similarly situated." *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 537 (3d Cir. 2011). Final certification imposes a higher burden than does the "fairly lenient" standard for conditional certification. *See, e.g., id.* at 535-36. Moreover, because the final certification inquiry is fact-intensive, it should take place "after discovery is largely complete and the case is ready for trial." *Morisky v. Public Service Elec. and Gas. Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000). In determining whether plaintiffs are similarly situated for final certification purposes, a court should consider all relevant factors, including the following:

> [W]hether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Zavala*, 691 F.3d at 536-37. Additionally, courts in the Third Circuit have often considered "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *See, e.g., Ruffin v. Avis Budget Car Rental, LLC*, Civ. No. 11-1069, 2014 WL 294675, *3 (D.N.J. Jan. 27, 2014) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)).

When engaging in this analysis, the Court should also consider what Plaintiffs must prove at trial. *Cf. Adam v. Cardo Windows, Inc.*, 299 F.R.D. 68, 84 (D.N.J. 2014). Assuming that Office Depot's reverse misclassification defense is viable, Plaintiffs must prove that ASMs do not fall into any one of the following three exemptions:

1. **The Executive Exemption (29 C.F.R. § 541.100(a)):** Applies to an employee (1) who receives a salary of not less than $455 per week; (2) whose "primary duty is management"; (3) who "regularly directs the work of two or more other employees"; and (4) who is authorized to "hire and fire other employees" or whose recommendations as to the hiring and firing "are given particular weight."

---

[1] Indeed, Plaintiffs have suggested that the reverse misclassification issue can be addressed at summary judgment. *See* Pls.' Opp. to Def's Mot. at 2.

2. **The Administrative Exemption, (29 C.F.R. § 541.200(a)):** Applies to an employee (1) who receives a salary of not less than $455 per week; (2) whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

3. **The Combination Exemption, (29 C.F.R. § 541.708):** Applies to an employee who performs "a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees…[F]or example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption."

If ASMs are not similarly situated, the Court cannot make a collective determination of whether any of the exemptions apply. If, however, ASMs are similarly situated, final certification of the collective action is appropriate. For the reasons that follow, the Court concludes that ASMs are similarly situated.

### 1. Office Depot Policies and Procedures

The fact that all ASMs were governed by the same corporate policies and procedures weighs in favor of final certification. According to Office Depot's Rule 30(b)(6) witness, Andrew Taylor, all ASMs were governed by the same standard operating procedures ("SOPs"), regardless of store location and size.[2] Specifically, ASMs were required to adopt pricing decisions made by a central corporate department;[3] stock shelves in a certain manner;[4] implement designated advertisements;[5] and adhere to certain product layout standards, also known as planograms.[6] These are just a few examples of how the SOPs sought to guide the daily activities of ASMs.[7]

Mr. Taylor also testified that ASMs largely performed the same functions across different Office Depot stores.[8] Similarly, he testified that all ASMs were trained by the same program.[9] The goal of such uniformity, Mr. Taylor explained, was to provide

---

[2] *See* Taylor Dep. Tr. at 64:5-20; 66:17-68:19.
[3] *See* Taylor Dep. Tr. at 71:18-72:5
[4] *See* Taylor Dep. Tr. at 69:22-71:1.
[5] *See* Taylor Dep. Tr. at 71:18-72:5.
[6] *See* Taylor Dep. Tr. at 72:19-25.
[7] *See* Taylor Dep. Tr. at 75:13-80.
[8] *See* Taylor Dep. Tr. at 64:16-21.
[9] *See* Taylor Dep. Tr. at 65:21-66:7.

customers with a consistent experience regardless of which Office Depot store they visited.[10]

While the imposition of uniform policies does not guarantee that all ASMs will be identical, it does suggest that their roles will be substantially similar. *See, e.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) (employees are more likely to have similar job functions where their roles "are largely defined by comprehensive corporate procedures and policies…") (citing cases). However, as Office Depot correctly notes, the existence of uniform policies and procedures is not dispositive. *See Alakozai v. Chase Investment Services Corp.*, Civ. No. 11-09178, 2014 WL 5660697, *7 (C.D.Cal. Oct. 6, 2014) (citing *Rosenberg v. Renal Advantage, Inc.*, Civ. No. 11-2152, 2013 WL 3205426, *8 (S.D. Cal. June 24, 2013)). Accordingly, the Court will now turn to the portions of the record reflecting the actual work that ASMs performed on a daily basis.

### 2. <u>Supervisory Authority and Managerial Role</u>

In opposing final certification, Office Depot contends argues that ASMs vastly differ in the degree to which they supervised and managed other employees. The Court disagrees. The record shows that ASMs spent a vast majority of their time on menial tasks, including shelving, restocking, setting up planograms, and tending to the cash register. *See, e.g., Stillman v. Staples, Inc.*, Civ. No. 07-849, 2009 WL 1437817, *19 (D.N.J. May 15, 2009) (granting final certification where employees testified that "they spent a majority of their time completing non-exempt 'hourly tasks'"). For example, ASM Bridget Boykin testified that she spent approximately 85% of her time on those tasks.[11] ASM Angela Bradford similarly testified that she spent 90% of her day cleaning the store, unloading trucks, working the cash register, and restocking shelves.[12] Such testimony is not limited to Ms. Boykin and Ms. Bradford; a large number of ASMs provided a similar statistical breakdown regarding their job functions.[13]

Office Depot further argues that the Court cannot merely look at the amount of time ASMs spent on managerial tasks; it must also analyze the substantive importance of those tasks relative to the ASMs' overall job responsibilities. *See* Def's Reply at 18. After engaging in that exercise, however, the Court continues to find that the ASMs are similarly situated. Office Depot correctly notes that some ASMs admitted to acting as "Managers on Duty" who directed the activities of other associates, whereas other ASMs merely referred to themselves as "glorified cashiers." *See* Def's Mot. at 24-25.[14] However, Office Depot's portrayal of the record is limited. In reality, many of the ASMs who prided

---

[10] *See* Taylor Dep. Tr. at 69:9-15.
[11] *See* Boykin Dep. Tr. at 140:5-141:7.
[12] *See* Bradford Dep. Tr. at 75:20-76:21.
[13] *See, e.g.*, Chaves Dep. Tr. at 119:15-18; Harriet Dep. Tr. at 200:7-13; Kinser Dep. Tr. at 61:16-62:22; Pritchett Dep. Tr. at 259:8-260:16; Slaw Dep. Tr. at 167:9-168:17.
[14] See also Chaves Dep. Tr. at 19:8-15; Harriet Dep. Tr. at 85:20-86:5; Kinser Dep. Tr.

themselves on having supervisory authority nonetheless acknowledged that menial tasks would routinely take precedence over managerial duties. For example, ASM Oscar Chaves testified that while he enjoyed supervising other employees when feasible, those interactions were minimal because he was often "running back and forth to register, to planograms, to pull downs…."[15] ASM David Kinser similarly testified that despite being responsible for monitoring other employees, he often needed to focus on non-managerial tasks, such as cashiering.[16] That testimony largely mirrored the testimony of ASM Jeremiah Harriet. Mr. Harriet admitted that his formal job description included certain managerial responsibilities, but clarified that ASMs "do a lot of other stuff beside what was actually, was our job description," including menial tasks like stocking shelves, cashiering, selling merchandise, and cleaning the store.[17] Consequently, the Court finds that ASMs are similarly situated with respect to their supervisory roles.[18]

### 3. Power to Train, Discipline, and Review

Office Depot further argues that ASMs vastly differed in how they trained, disciplined, and reviewed other employees. For the reasons that follow, the Court disagrees.

While almost all ASMs trained other associates to a limited degree, they nonetheless expended most of their energy on non-managerial tasks. ASM Brandie McDaniels testified that Office Depot employees "all coached each other"; Mr. Harriet admitted that he had given associates feedback on their sales techniques;[19] ASM Burton Slaw would at times impart his knowledge to sales associates;[20] and ASM Michael Snyder testified that he would spend some time "coaching [the associates'] behavior…."[21] Notwithstanding that testimony, those same ASMs explained that their coaching responsibilities comprised a small fraction of their overall roles at Office Depot. Mr. McDaniels testified that his most important function at Office Depot was "putting stuff on the shelf";[22] Mr. Harriet would spend much of his day following a "to-do list" prepared by a store manager;[23] Mr. Slaw recalled that his ability to train sales associates was limited;[24] and Mr. Synder testified that

---

[15] *See* Chaves Dep. Tr. at 24:7-12.
[16] *See* Kinser Dep. Tr. 26:5-18; *see also id*. at 61:16-62:22 (explaining that non-managerial tasks comprised a large portion of the workday).
[17] *See* Harriet Dep. Tr. at 198:10-200:13.
[18] Office Depot also argues that ASMs are not similarly situated because not all ASMs testified as to having a clear mutual understanding that they received a fixed salary. *See* Def's. Mot. at 32 (citing 29 C.F.R. § 778.114(a)(3)). However, the thrust of Plaintiffs' case is that ASMs were not paid a fixed weekly salary regardless of hours worked. Thus, even if ASMs differed in their understanding of how they were compensated, those differences are immaterial if Office Depot did not pay a fixed salary to begin with.
[19] *See* Harriet Dep. Tr. at 52:9-17.
[20] *See* Slaw Dep. Tr. at 159:23-25.
[21] *See* Snyder Dep. Tr. at 107:12-20.
[22] *See* McDaniels Dep. Tr. at 55:9-55:16
[23] *See* Harriet Dep. Tr. at 47:12-17.
[24] *See* Slaw Dep. Tr. at 171:16-25.

his coaching responsibilities did not involve a great deal of discretion because he "was just coaching as to what [his store manager] wanted…."[25]

The record paints a similar picture with respect to disciplining and reviewing. True, ASMs are not identical in the degree to which they disciplined and reviewed associates; however, complete symmetry of job functions is not required for final certification under the FLSA. *See, e.g., Ruffin*, 2014 WL 294675, at *3 ("While there are disparities in the deposition testimony about job duties, they are not material and 'any such differences are outweighed by the similarities between those Plaintiffs.'" (quoting *Garcia v. Freedom Mortgage Corp.*, 790 F.Supp.2d 283, 287 (D.N.J. 2011))); *Stillman*, 2009 WL 1437817, *18 ("the similarly situated standard of § 216(b)…does not require that plaintiffs be identical." (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 573-74 (E.D.La. 2008))). Here, the operative question is whether ASMs possessed certain "primary" duties such that they would qualify as exempt under the FLSA. So yes, Mr. Chaves wrote associates up for infractions[26] while Mr. Slaw[27] did not; but the significance of that distinction is minimal because Mr. Chaves described his write-ups as "useless" formalities that management largely ignored.[28] And again, even ASMs who were less cynical about their ability to discipline and review nonetheless testified that they were mostly preoccupied with non-managerial tasks.[29] These are mere examples of the many ways in which ASMs shared substantially similar experiences with respect to disciplining and training other Office Depot employees.

### 4. Role in Hiring

Office Depot also argues that ASMs varied with respect to their roles in hiring new employees. As previously indicated, an employee is more likely to be qualify as exempt where he or she plays a substantial role in hiring decisions. *See* 29 C.F.R. § 541.100(a); 29 C.F.R. § 541.708. If ASMs did not share similar responsibilities in that regard, they may not be similarly situated under the FLSA.

The record reveals that while ASMs may not have had identical experiences in hiring, their roles were sufficiently similar to weigh in favor of final certification. Office Depot argues that some ASMs testified that they would interview candidates and provide feedback to their managers,[30] whereas others downplayed their role in the process.[31] However, as Plaintiffs correctly note, nearly every single ASM who provided testimony

---

[25] *See* Slaw Dep. Tr. at 159:23-25.
[26] *See* Chaves Dep. Tr. at 43:12-22.
[27] See Slaw Dep. at Tr. at 122:12-24.
[28] *See* Chaves Dep. Tr. at 43:23-44:15.
[29] *See,e.g.,* Kinser Dep. Tr. at 26:12-18; Pritchett Dep. Tr. at 143:8-11; 259:8-260:15; Harriet Dep. Tr. at 198:16-199:3.
[30] *See* Harriet Dep. Tr. at 132:20-133:9; McDaniels Dep. at 23:22-24; Chaves Dep. at 21:18-22:11; Kinser Dep. at 20:20-21:2, 21:18-23.
[31] *See* Stelljes Dep. at 64:1-7; Rivet Dep. at 89:23-90:12; Pritchett Dep. at 137:8-12.

had, on a general level, the same involvement in hiring: ASMs would at times participate in the interviewing of candidates, but the store managers would ultimately decide whether a candidate should be hired. *See* Pls. Opp. at 28. While Office Depot has highlighted some differences amongst ASMs with respect to hiring, those differences are not sufficiently material to preclude final certification.[32]

## 5. **Other Considerations**

At the final certification stage, courts in the Third Circuit will also consider "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *See, e.g., Ruffin*, 2014 WL 294675 at *3 (citations omitted). For reasons already explained, the factual and employment settings of ASMs were sufficiently similar to warrant final certification. The Court will now consider the other two factors: (1) Office Depot's defenses, and (2) fairness and procedural considerations.

First, the Court concludes that it can address Office Depot's defenses on a collective basis. Office Depot largely argues that representative testimony is problematic because many of the testifying ASMs are not credible.[33] However, if that were enough to defeat final certification, FLSA actions could never proceed on a collective basis whenever witness credibility was at issue. Such an extreme view contravenes the well-settled principle that the FLSA should be liberally construed to achieve its purpose. *See, e.g, Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959); *see also Reich v. Gateway Press, Inc.*, 13 F.3d 686, 701 (3d Cir. 1994) (collecting cases in support of the fact that "[c]ourts commonly allow representative employees to prove violations with respect to all employees") (citations omitted); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263-65 (11th Cir. 2008) (representative testimony was appropriate in a case where plaintiffs "shared a number of factual details with respect to their job duties") The Court is confident that Office Depot can make its credibility arguments on a collective basis. Accordingly, it rejects Office Depot's argument that individual defenses preclude final certification.

Second, procedural and fairness considerations weigh in favor of final certification. In the absence of final certification, ASMs who wish to pursue their claims would be forced to file individual lawsuits on their own behalf. Because in most cases the cost of litigation would greatly exceed the amount of any potential recovery, a majority of ASMs would not be able to pursue their claims. Moreover, even if many ASMs did individually sue,

---

[32] Office Depot also cites to a number of other differences that, in its view, preclude final certification. *See* Def's Mot. at 30-32. Again, these minute differences do not prevent the court from collectively deciding whether ASM's possessed certain primary duties such that they qualified as exempt.

[33] Specifically, Office Depot argues that the testifying ASMs are contradicted by the job descriptions on their resumes and the testimony from other company employees.

9

litigating hundreds of individual wage and hour claims arising out of the same corporate policy would place an onerous – and totally unnecessary – burden on this Court.

Accordingly, the Court **GRANTS** Plaintiffs' motion for final certification of the FLSA collective action, and **DENIES** Office Depot's motion for decertification of the FLSA collective action.

## III. CLASS CERTIFICATION

The Court must now determine whether it should certify the State Law Classes, which consist of a Colorado Class, a Maryland Class, an Oregon Class, and a Washington Class. The representative plaintiffs (the "Named Plaintiffs") for each State Law Class allege that the FWW Plan violated their respective state wage and hour laws. The parties agree that the overtime exemptions existing under those state laws[34] largely mirror the exemptions found in the FLSA.

Under Federal Rule of Civil Procedure 23(a), a class may be certified only where (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These are known as the numerosity, commonality, typicality, and adequacy requirements. *See In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). In addition to fulfilling the requirements of Rule 23(a), a plaintiff must also meet one of the requirements set forth in Rule 23(b). *Id.* The requirement at issue here comes from Rule 23(b)(3), which permits certification only if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (footnote and quotation marks omitted). Each Rule 23 requirement must be established by a preponderance of the evidence. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-*

---

[34] The following are the relevant state laws and regulations at issue: the Colorado Minimum Wage Act ("CMWA"), COLO. REV. STAT. ANN. § 8-6-101, et seq. and implementing regulations, 7 COLO. CODE REGS. §§ 1103-1:1, et seq., COLO. REV. STAT. §§ 8- 4-101-80-4-123 ("CWA"), the Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN., LAB. & EMPL. § 3-401, et seq., Oregon wage law and implementing regulations, OR. REV. STAT. ANN. §§ 633.261(1), 652.120, 652.145, 652.230, et seq., 653.055 and OR. ADMIN. R. 839-020-0030, et seq. ("Oregon Wage Laws"), and the Washington Minimum Wage Act, WASH. REV. CODE ANN. § 49.46, et seq., 49.52.50, 49.48.030 ( "WMWA" ).  See Second Amendment Complaint at. ¶¶ 34-41.

*Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), merits questions may be considered only to the extent that they are relevant to determining whether Rule 23 prerequisites have been met. *See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1195 (2013) (internal citations omitted).

### 1. Numerosity

"To be certified, a class must be large enough in number to ensure that, for efficiency purposes, a class does not subject the defendants to multiple, similar lawsuits." *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 242 (D.N.J. 2008) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 309 (3d Cir. 1998)). The numerosity requirement does not impose a bare minimum number of plaintiffs, however "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). In this case, the smallest State Law Class contains 35 members, while the other State Law Classes contain at least 49 members. In light of those numbers, the Court is satisfied that the numerosity requirement has been met.

### 2. Commonality

The commonality requirement is met if there are "questions of law or fact similar to the class." *Newton*, 259 F.3d 154, 182 (quoting Fed.R.Civ.P. 23(a)(2)). "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The "threshold of commonality is not high." *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986) (internal citations omitted).

Plaintiffs meet the commonality requirement because all individuals within the State Law Classes were subject to the FWW Plan. Therefore, there is a common question of whether the FWW Plan violated the laws of Colorado, Maryland, Oregon, and Washington. Office Depot argues against commonality on the grounds that the ASMs greatly varied in their roles and responsibilities. However, the Court concludes that those concerns are more germane to the question of whether Plaintiffs have established predominance under Rule 23(b)(3). *See In re Morgan Stanley Smith Barney LLC Wage and Hour Litig.*, Civ. No. 11-3121, 2016 WL 1407743, *3 (D.N.J. Apr. 11, 2016) (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001)). Accordingly, the Court will address those issues later in this opinion.

### 3. Typicality and Adequacy

The Court must also determine whether Plaintiffs have established typicality and adequacy. "Typicality entails an inquiry whether the named [plaintiffs'] individual circumstances are markedly different … or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (internal quotations and citations omitted). Therefore, typicality may be satisfied where the plaintiff's claims "'arise [ ] from the same … practice or course of conduct that gives rise to the claims of the class members,' and are based on the same legal theory." *Bright v. Asset Acceptance*, LLC, 292 F.R.D. 190, 200 (D.N.J. 2013) (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006)). Adequacy, on the other hand, concerns "whether the named plaintiffs have the ability and incentive to vigorously represent the claims of the class." *In re Community Bank of Northern Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015) (citing *In re Community Bank of Northern Virginia*, 522 F.3d 275, 291 (3d Cir. 2010)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Id.* (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).

The Court concludes that, with the exception of the Oregon Class, Plaintiffs have established both typicality and adequacy by a preponderance of the evidence. Setting aside the Oregon Class for the moment, the Named Plaintiffs and the individuals they seek to represent shared the same job title, were compensated pursuant same pay policy, and will be subject to the same defenses. The Court also finds that the incentives of the Named Plaintiffs are sufficiently aligned with those of the other class members. *See, e.g., In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009). Therefore, the Court finds that the Named Plaintiffs from Colorado, Maryland, and Washington meet the typicality and adequacy requirements.

Office Depot argues that typicality and adequacy have not been established for the Oregon Class because the claims of Amanda Nohrenberg – the sole Named Plaintiff for the Oregon Class – have been dismissed with prejudice for failure to participate in discovery. *See* Def's. Opp. at 32; see also ECF No. 178, ¶¶ 60-63. In response, Plaintiffs argue that where a representative plaintiff's claims have been mooted or are otherwise not viable, courts should permit the substitution of a new class representative. *See* Pls.' Reply at. 11.

While Plaintiffs correctly observe that the substitution of class representatives is allowed at the pre-certification stage, *see In re Nat'l Austl. Bank Sec. Litig.*, Civ. No. 03-6537, 2006 WL 3844463, *3 (S.D.N.Y. Nov. 8, 2006), their failure to substitute Ms. Nohrenberg in accordance with that principle currently precludes certification of the Oregon Class. Plaintiffs ask this Court to grant their motion for certification before a new representative for the Oregon Class is put in place. Adopting that proposal would turn the class certification process on its head. Without a replacement for Ms. Nohrenberg, the Court cannot determine whether typicality and adequacy have been established for the

Oregon Class. *See, e.g., Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2010) (typicality involves determination of whether "the named plaintiff[s'] *individual circumstances* are markedly different…or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.") (emphasis added) (citing *Eisenberg*, 766 F.2d at 786 (3d Cir. 1985)); *see also Pittsburgh Mack Sales & Service, Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 190-91 (3d Cir. 2009) (judicial action that relies on a series of hypotheticals amounts to nothing more than an impermissible advisory opinion). Plaintiffs' motion to certify the Oregon Class will be **DENIED WITHOUT PREJUDICE**. The Court will grant Plaintiffs twenty-one (21) days leave to move for the substitution of Ms. Nohrenberg.[35]

The Court will now determine whether the other requirements of Rule 23 have been met.

### 4. Predominance and Superiority – Rule 23(b)(3)

The Court must determine whether Plaintiffs have demonstrated predominance under Rule 23(b)(3). Predominance will exist where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." While bearing some similarity to the commonality requirement of Rule 23(a), the predominance test presents a "far more demanding" standard. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310-11.

"If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id*. at 311 (quoting *Newton*, 259 F.3d at 172). Accordingly, Plaintiffs must demonstrate that their claims are "capable of proof through evidence that is common to the class rather than individual to its members." *Id*. at 311-12. As the Supreme Court has recently stated, "Rule 23(b)(3), as an adventuresome innovation, is designed for situations in which class-action treatment is not as clearly called for." *Comcast v. Behrend*, 133 S.Ct. 1426, 1432 (2013).

For reasons already explained in Section II of this opinion, the Court concludes that common issues predominate.[36] First, ASMs in the State Law Classes were all governed by the same SOPs. Second, in the context of analyzing their primary duties, ASMs generally performed the same employment functions. A thorough review of the record reveals that ASMs spent a vast majority of time performing non-managerial tasks; that those menial tasks often took precedence over managerial responsibilities; that ASMs were limited in

---

[35] Office Depot will have the opportunity to oppose Plaintiffs' substitution motion.
[36] While the Court largely incorporates its prior discussion of the FLSA collective, it has made an independent determination that the record supports a finding of predominance under the unique requirements of Rule 23(b)(3).

their ability to hire and fire; and that ASMs were similarly hampered in their ability to play a significant role in the coaching and training process. *See* Section II., *supra*.

Like it did in its opposition to final certification of the FLSA collective, Office Depot argues that class certification must be denied because the roles and functions of different ASMs varied significantly. However, the differences pointed out by Office Depot are largely immaterial to the ultimate determination of whether ASMs are exempt. Instead, those differences unremarkably demonstrate that ASMs were not exactly the same in every single way imaginable. But while Rule 23(b)(3) imposes a considerable burden on Plaintiffs, granular uniformity between class members is not required for establishing predominance. Instead, Plaintiffs' claims must be "capable of proof at trial through evidence that is common to the class rather than individual to its members." *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268 (3d Cir. 2009) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008); *see also Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citations omitted). Here, the common traits and experiences held by ASMs vastly predominate over the minute and largely inconsequential differences relied upon by Office Depot. *See, e.g., Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 421 (S.D.N.Y. 2013) (finding predominance where minor differences between ASMs in retail misclassification action "[did] not eliminate the overriding consistencies present throughout all of the testimony"); *Youngblood v. Family Dollar Stores, Inc.*, Civ. No. 09-3176, 2011 WL 4597555, *5 (S.D.N.Y. Oct. 4, 2011) (predominance requirement met where differences between store managers were not material to whether their jobs were exempt from overtime requirements). The Court therefore concludes that Plaintiffs have established predominance under Rule 23(b)(3).

A class action is also a superior method of adjudicating Plaintiffs' claims. *See Georgine v. Achem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996). As this Court already concluded in its discussion of the FLSA collective, ASMs will have little incentive to pursue their claims on an individual basis. *See, e.g., Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 201-202 (D.N.J. 2014). More importantly, class treatment is practicable because ASMs in the State Law Classes shared similar roles and responsibilities, they all were governed by a uniform corporate overtime policy, and they all are alleging that the FWW Plan was illegal. *See Mann v. TD Bank, N.A.*, Civ. No. 09-1062, 2010 WL 4226526, *18 (D.N.J. Oct. 20, 2010) (citations and quotations omitted). Finally, the proposed class members are reasonably ascertainable. *See id*.

### 5. Appointment of Class Counsel

The following firms request that they be appointed class counsel: Klafter Olsen & Lesser LLP, Berger & Montague, P.C., Whitfield Bryson & Mason LLP, and Locks Law

Firm.  Under Rule 23(g), which provides for the appointment of class counsel, courts must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  After reviewing the relevant information, the Court will appoint the above-mentioned firms as class counsel with respect to the Colorado, Maryland, and Washington Classes.  Appointment of class counsel for the Oregon Class would be premature because the class has not been certified.  *See Glen Ridge SurgiCenter, LLC v. Horizon Blue Cross and Blue Shield of New Jersey*, Civ. No. 08-6160, 2011 WL 5881924, *7 (D.N.J. Sept. 16, 2011).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for certification of the FLSA collective action is **GRANTED**, while Office Depot's motion for decertification is **DENIED**.  Plaintiffs' motion for class certification of the State Law Classes is **GRANTED in part and DENIED in part**.  The motion is **GRANTED** as to the Colorado, Maryland, and Washington Classes, but **DENIED WITHOUT PRJEUDICE** as to the Oregon Class.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 13, 2016**